## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

TRUSTPILOT DAMAGES LLC,
individually and on behalf of all others similarly
situated,

        *Plaintiff*,

    v.

TRUSTPILOT INC. and TRUSTPILOT A/S,

        *Defendants*.

Civil Action No. 1:21-cv-00432-JSR

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## TRUSTPILOT, INC.'S MOTION TO DISMISS

MCDERMOTT WILL & EMERY LLP

Andrew B. Kratenstein
Caroline A. Incledon
Kierstin S. Fowler
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

William P. Donovan, Jr. (admitted *pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, California
(310) 788-4121

*Attorneys for Defendant Trustpilot, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

LEGAL STANDARD...........................................................................................................5

ARGUMENT ....................................................................................................................6

    I.      PLAINTIFF LACKS STANDING BECAUSE THE PURPORTED
           ASSIGNMENT IS VOID AS CHAMPERTOUS ...................................................6

    II.     PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE
           AGREEMENT IS UNAMBIGUOUS AND TRUSTPILOT
           ENGAGED IN NO DECEPTIVE ACT .................................................................8

           A.     Plaintiff Fails to State a Claim for Breach of Contract.............................9

           B.     Plaintiff Fails to State a Claim for Breach of the Implied
                Duty of Good Faith and Fair Dealing .......................................................12

           C.     Plaintiff Fails to State a Claim for Unjust Enrichment .............................14

           D.     Plaintiff Fails to State a Claim Under New York GBL §
                349 and GOL § 5-903 ..............................................................................15

                1.     Plaintiff fails to state a claim under GBL § 349
                         because Plaintiff fails to allege Trustpilot engaged
                         in a deceptive business practice or consumer
                         oriented misconduct. ......................................................15

                2.     Plaintiff fails to state a claim under GOL § 5-903
                           because the subscription service does not pertain to
                         real or personal property .................................................17

            E.     Plaintiff Cannot State a Claim for Violations of Other
                States' Unfair Business Practices Statutes................................................18

    III.    THE COMPLAINT SHOULD BE DISMISSED WITH
           PREJUDICE ...............................................................................................20

CONCLUSION...................................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Rest. China Mfrs. Ass'n, Inc. v. Corning Glass Works*,
198 N.Y.S.2d 366 (Sup. Ct. Erie Co. 1960)................................................................8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)........................................................................................5

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003)........................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................5

*Asimov v. Trident Media Grp., LLC*,
999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014) ....................................................16, 18

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..........................................................................................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
296 Ill. Dec. 448 (2005)............................................................................................20

*Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*,
No. 7:11-CV-2563, 2011 WL 3628858 (S.D.N.Y. Aug. 16, 2011).........................15

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
94 N.Y.2d 726 (2000) .................................................................................................7

*BSC Assocs., LLC v. Leidos, Inc.*,
No. 3:14-cv-00645, 2015 WL 667853 (N.D.N.Y. Feb. 17, 2015)............................8

*Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*,
190 F. Supp. 3d 765 (N.D. Ill. 2016), *aff'd sub nom. Cafferty, Clobes,
Meriwether & Sprengel, LLP*, 850 F.3d 840 ................................................... 11-12

*Cafferty, Clobes, Meriwether & Sprengel, LLP v. XO Commc'ns Servs., LLC*,
850 F.3d 840 (7th Cir. 2017) .......................................................................9, 10, 12

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
208 F. Supp. 3d 494 (E.D.N.Y. 2016) ......................................................................19

*In re CCT Commc'ns, Inc.*,
No. 07-10210 (SMB), 2008 WL 2705471 (Bankr. S.D.N.Y. July 2, 2008) .....................20-21

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................................6

*Chasman v. JP Morgan Chase Bank, NA*,
  No. 18 CIV. 6681 (NRB), 2020 WL 207784 (S.D.N.Y. Jan. 14, 2020)................................10

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)....................................................................................................6

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)..................................................................................................14

*Cruz v. NYNEX Info. Res.*,
  703 N.Y.S.2d 103 (1st Dep't 2000) ......................................................................................17

*Denenberg v. Rosen*,
  897 N.Y.S.2d 391 (1st Dep't 2010) ......................................................................................15

*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015)...................................................................................14

*Donald Rubin, Inc. v. Schwartz*,
  559 N.Y.S.2d 307 (1990)................................................................................................15, 18

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
  328 F. Supp. 2d 443 (S.D.N.Y. 2004)...................................................................................17

*Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*,
  No. 13-CV-8997 (JPO), 2016 WL 236249 (S.D.N.Y. Jan. 20, 2016)....................................11

*GemShares, LLC v. Kinney*,
  No. 17 CIV. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017).....................................6

*Gowen v. Helly Nahmad Gallery, Inc.*,
  77 N.Y.S.3d 605 (Sup. Ct. N.Y. Co. 2018), *aff'd*, 95 N.Y.S.3d 62 (2019) .............................7

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989)................................................................................... 12-13

*House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*,
  No. 13-CV-519, 2015 WL 5190432 (S.D.N.Y. Sept. 4, 2015)................................................7

*Justinian Capital SPC v. WestLB AG*,
  28 N.Y.3d 160 (2016) ........................................................................................................7-8

*Long Island Lighting Co. v. Transam. Delaval Inc.*,
  646 F. Supp. 1442 (S.D.N.Y. 1986)........................................................................................6

*Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*,
  775 N.Y.S.2d 59 (2d Dep't 2004) ................................................................. 15-17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................5

*Mazzola v. Roomster Corp.*,
  849 F. Supp. 2d 395 (S.D.N.Y. 2012) ........................................................... 9-11

*Michael Todd, et al., v. Xoom Energy Maryland, LLC, et al.*,
  No. 8:15-CV-154, 2015 WL 10714486 (D. Md. Apr. 25, 2015) ........................20

*Mill Fin., LLC v. Gillett*,
  992 N.Y.S.2d 20 (2014) ...................................................................................13

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*,
  No. 14-CV-10116, 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) ........................7

*Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys.,
  U.S.A., Inc.*,
  No. 20 CIV. 4117 (AKH), 2021 WL 149027 (S.D.N.Y. Jan. 15, 2021) ..................14, 16, 19

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
  131 F.R.D. 56 (S.D.N.Y. 1990) ...........................................................................8

*Reit v. Yelp!, Inc.*,
  907 N.Y.S.2d 411 (Sup. Ct. N.Y. Co. 2010) .....................................................17

*Rephen v. Gen. Motors Corp.*,
  No. 15-CV-5206 (NSR), 2016 WL 4051869 (S.D.N.Y. July 26, 2016) ................21

*In re Residential Capital, LLC*,
  531 B.R. 25 (Bankr. S.D.N.Y. 2015) .................................................................13

*Rice v. Scudder Kemper Invs., Inc.*,
  No. 01 CIV. 7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003),
  *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d
  Cir. 2006) ......................................................................................................19

*Rothbaum v. Bank of Am., N.A.*,
  No. 16-CV-02387 (ALC), 2017 WL 253068 (S.D.N.Y. Jan. 19, 2017) ................21

*S'holder Representative Servs. LLC v. Scribble Techs. Inc.*,
  No. 17-CV-2056 (PKC), 2018 WL 2356659 (S.D.N.Y. Mar. 30, 2018) .................7

*SCM Grp., Inc. v. McKinsey & Co.*,
  No. 10 CIV. 2414 (PGG), 2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011) ..............14

*Staehr v. Mack*,
    No. 07-CV-10368, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011) ............................................6

*Tar Heel Indus., Inc. v. E.I. duPont de Nemours & Co.*,
    91 N.C. App. 51 (1988) ............................................................................................20

*Underdog Trucking, LLC, Reggie Anders*, 2010 WL 2900048, at *6 ...........................................13

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) .................................................................................21

*Yak v. BiggerPockets, L.L.C.*,
    No. 19-CV-05394 (PMH), 2020 WL 5505351 (S.D.N.Y. Sept. 10, 2020) ...........................20

**Statutes**

Ariz. Rev. Stat. Ann. § 44-1522(a) ...........................................................................................20

Cal. Bus. & Prof. Code § 17200 ...............................................................................................20

Conn. Gen. Stat. § 42-110b .......................................................................................................20

D.C. Code § 28-3904 ................................................................................................................20

Fla. Stat. § 501.202 ...................................................................................................................20

Haw. Rev. Stat § 481A-3 ..........................................................................................................20

Ill. Comp. Stat. 505/2 ...............................................................................................................20

Minn. Stat. § 325F ....................................................................................................................20

N.C. Gen. Stat. § 75-1.1 ...........................................................................................................20

N.J. Stat. Ann. § 56:8-2 ............................................................................................................20

N.M. Stat. Ann. § 57-12-3 ........................................................................................................20

N.Y. Gen. Oblig. Law § 5-1401 ...............................................................................................19

N.Y. Gen. Oblig. Law § 5-903 ......................................................................................4, 15, 17-18

N.Y. Gen. Business Law § 349 .....................................................................................4, 15-17, 21

N.Y. Judiciary Law § 489 ......................................................................................................6, 8

Or. Rev. Stat. § 646.605 ............................................................................................................20

Utah Code Ann. § 13-11-4 ........................................................................................................20

Vt. Stat. Ann. Tit. 9 § 2453...................................................................................................20

Wash. Rev. Code § 19.86.020.............................................................................................20

Wis. Stat. § 100.18..............................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................................................................................................5, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................................5, 7

## PRELIMINARY STATEMENT

This manufactured lawsuit against Trustpilot, Inc. ("Trustpilot") fails as a matter of law on both procedural and substantive grounds.  At issue is the renewal of subscriptions for Trustpilot, a highly respected and successful company allowing users to post reviews of businesses on its website.  Those businesses are able to contract with Trustpilot to collect and manage information concerning the reviews.  The contracts are memorialized in a Service Subscription Agreement (the "Agreement"), which clearly explains all of the subscription's terms, including the auto-renewal term.

Plaintiff Trustpilot Damages LLC ("Plaintiff") is a dubious entity created for the express purpose of taking an assignment of the Agreement from an unspecified Trustpilot customer (the "Assignor") who signed up with Trustpilot in 2017.  Plaintiff's name and its address (which it shares with Plaintiff's counsel) reveals that Plaintiff was formed to take the assignment and bring this lawsuit – a violation of New York State's champerty laws.  The Complaint should be dismissed for that reason alone.

Plaintiff's claims also fail because they contradict the unambiguous terms of the Agreement, which is governed by New York law.  Plaintiff's Complaint is premised on the implausible assertion that Trustpilot duped its business customers into automatically renewing their subscriptions by designing an automatic renewal reminder e-mail that ended up in the subscriber's junk e-mail.  Even if Trustpilot had deliberately designed the reminder e-mail to go to the customer's junk e-mail folder – which Trustpilot did not – Trustpilot had no duty (contractual or otherwise) even to send a reminder e-mail.

Plaintiff conspicuously did not attach to its Complaint or plead any terms of the Agreement.  It is no wonder why.  The Agreement specifically and lawfully tells customers in plain terms how they can unsubscribe from Trustpilot's service.

The Agreement states that all the Assignor had to do to cancel was send an "unsubscribe" e-mail to a specified Trustpilot e-mail address at least 30 days before the end of the subscription's annual term.  Had Assignor simply read the Agreement – and perhaps set itself a calendar reminder – it would have known exactly what it had to do to unsubscribe and when. Indeed, the Complaint raises no concern with the Assignor's first renewal of the service in 2018 – only the second one in 2019.

In short, Plaintiff's claims all fail as a matter of law because the premise of Plaintiff's lawsuit – that Trustpilot fools customers into renewing their subscriptions without their consent – is belied by the Agreement's plain terms.  Those terms demonstrate that Trustpilot was under no obligation to send a reminder e-mail to its customers, who were specifically instructed as to how they could unsubscribe.  That Assignor may not have read the Agreement or exercised reasonable diligence in unsubscribing is no fault of Trustpilot's.  Accordingly, the Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

Plaintiff, an Iowa limited liability company, is allegedly an assignee of all rights, title, and interest of all causes of action possessed by Assignor.  (Compl. ¶ 17.)  Plaintiff purports to represent a class of all persons or entities living in the United States who were sent an automatic renewal reminder e-mail from Trustpilot in the six years preceding the filing of the Complaint on January 18, 2021.  (*Id.* ¶ 72.)  Plaintiff brings this action against Trustpilot and its parent company, Trustpilot A/S.[1]  (*Id.* ¶¶ 20-21.)

Trustpilot operates Trustpilot.com, a website that allows users to post reviews of businesses.  (*Id.* ¶¶ 1-2.)  Trustpilot also "sells subscriptions to businesses," which Plaintiff

---

[1] Trustpilot A/S has yet to be served.

alleges provide Trustpilot's "business customers access to consumer data and other purported benefits that Trustpilot claims to provide (1) consumer-insight data generated by the Website's activity and (2) limited means of controlling how consumer reviews about them are displayed online." (*Id.* ¶ 3.)

To become a Trustpilot customer, businesses agree to the terms and conditions in the Agreement.   (Declaration of Taylor Morgan Silverstein, dated March 11, 2021 ("Silverstein Decl.") ¶¶ 6-7.)   Plaintiff alleges that the Assignor "[a]cquired a Trustpilot Subscription on November 20, 2017." (Compl. ¶ 19(a).)   At that time, Trustpilot's subscription agreements were subject to the November 2016 version the Agreement.   (Silverstein Decl. ¶ 5, Ex. 2.)

Assignor agreed to the terms of the Agreement using an Order Form, dated November 20, 2017.   (Silverstein Decl. ¶¶ 5-7, Ex. 2 § 1.1.)   To accept the Order Form, Assignor had to check a box acknowledging that it "accepted the Service Subscription Agreement" and "agreed to the terms and conditions in [Trustpilot's] Service Subscription agreement."   (Silverstein Decl. ¶ 6, Ex. 3 at 3.)   The Order Form also contained a hyperlink to the Agreement.   (*Id.*)

Trustpilot's business subscriptions auto-renew each year unless cancelled.   The auto-renewal feature is clearly disclosed in the Agreement.   Section 1.2 of the Agreement states that "[t]he Agreement becomes effective on the date specified in the Order Form (the 'Effective Date') and remains in force *until terminated in accordance with section 7.*" (Silverstein Decl. Ex. 2 § 1.2) (emphasis added).   In turn, Section 7.2 of the Agreement states that, if a customer does not cancel its subscription more than thirty days prior to the end of the current term, the subscription will automatically renew.   (Silverstein Decl. Ex. 2 § 7.2.)   That provision reads:

> On the last day of the Initial Term and on each subsequent anniversary of that date, the Agreement will automatically be renewed at Trustpilot's then-current, standard non-discounted price for an additional period of same duration as the Initial Term in accordance with the terms referenced to in the applicable Order Form, unless one of the parties notifies the other party of its intent not to renew no less than thirty (30) days prior to the end of the then-current term.  Customer's notification of non-renewal must be made to: support@trustpilot.com.  Any such non-renewal shall be deemed to be a termination of the Agreement for the purposes hereof.

(*Id.*)  The Agreement does not impose any obligation on Trustpilot to send a reminder that a customer's subscription is renewing and the Complaint pleads no such obligation.  In fact, Assignor's annual subscription had auto-renewed in 2018 apparently without incident as Plaintiff does not plead Assignor was sent an "Auto-Enroll Email" in 2018, only in 2019.  (Compl. ¶ 19.)

Although the automatic renewal policy was clearly disclosed in the Agreement, Plaintiff alleges that Assignor, and the rest of the putative class, did not consent to auto-renewal of their subscriptions.  (*Id.* ¶ 15.)  Plaintiff further alleges that Trustpilot sent renewal-reminder e-mails to customers that somehow were designed to go to the customers' junk e-mail folders, so that the customers would be unaware that their subscriptions were being renewed.  (*Id.* ¶¶ 46-68.)

On January 18, 2021, Plaintiff filed its complaint, which asserts causes of action on behalf of the putative class for:  (1) breach of implied covenant of good faith and fair dealing; (2) breach of contract; (3) violation of GBL § 349 and GOL § 5-903; (4) violations of other state unfair business practices statutes, and (5) unjust enrichment.  (*Id.* ¶¶ 80-101.)  Plaintiff alleges that the class suffered monetary damages in an unspecified amount as a result of subscriptions that were automatically renewed, but which class members allegedly would not have renewed had they received the reminder email.  (*Id.* ¶ 69).  Plaintiff also alleges that the class has been harmed by having their subscriptions auto-renewed at a higher rate than the subscription that they had previously agreed to.  (*Id.*)

## LEGAL STANDARD

Trustpilot moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under Rule 12(b)(1), Plaintiff bears the burden of establishing standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678-81.  Dismissal is appropriate where the plaintiff fails "to raise a right to relief above the speculative level."  *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

In deciding a motion to dismiss, the Court may consider "any statements or documents incorporated in [the complaint] by reference" and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991).  Here, the Agreement and Order Form are incorporated by reference in the Complaint because they are relied upon in the Complaint

and form the basis for Plaintiff's claims.  *See, e.g.*, *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (holding that contracts were incorporated by reference where they were "integral" to the complaint); *Long Island Lighting Co. v. Transam. Delaval Inc.,* 646 F. Supp. 1442, 1446 n.3 (S.D.N.Y. 1986) (holding that pertinent contract was incorporated into the complaint by reference).

The Court may also "take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation."  *GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017).  Thus, the Court may take judicial notice of Plaintiff's Certificate of Organization filed with the Iowa Secretary of State. *See Staehr v. Mack*, No. 07-CV-10368, 2011 WL 1330856, at *6 n.5 (S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a motion to dismiss") (citation omitted).

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING BECAUSE THE PURPORTED ASSIGNMENT IS VOID AS CHAMPERTOUS

Assignor's assignment of the Agreement to Plaintiff is void as a matter of law because it was made in violation of New York's champerty statute.  New York Judiciary Law § 489 states: "No . . . corporation or association, directly or indirectly, . . . shall solicit, buy[,] or take an assignment of, or be in any manner interested in buying or taking an assignment of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." This prohibition was intended "to prevent or curtail the commercialization of or trading in litigation."  *Justinian Capital SPC v. WestLB AG,* 28 N.Y.3d 160, 163 (2016).

The New York Court of Appeals has held that an assignment is champertous when the "intent to sue on that claim" was the "primary purpose for, if not the sole motivation behind,

entering into the transaction." *Bluebird Partners, L.P. v. First Fid. Bank, N.A.,* 94 N.Y.2d 726, 735-36 (2000).  Assignments made in violation of the champerty statute are void, "effectively den[ying] the Plaintiff standing."[2]  *Gowen v. Helly Nahmad Gallery, Inc*., 77 N.Y.S.3d 605, 631 (Sup. Ct. N.Y. Co. 2018), *aff'd*, 95 N.Y.S.3d 62 (2019).

Here, Plaintiff's name alone – "Trustpilot Damages LLC" – demonstrates that the assignment was champertous.  Trustpilot Damages LLC was incorporated in Iowa on August 21, 2020 – just six months before the Complaint was filed.  (Silverstein Decl. ¶ 3, Ex. 1).  Plaintiff's principal place of business is listed with the Iowa Secretary of State as 305 Broadway, Suite 700, New York NY 10007, which is also the business address of Frank LLP, Plaintiff's counsel.[3]  (*Id.* Ex. 1.)  These facts establish that the sole purpose for the assignment was for Plaintiff assignee to bring this lawsuit.

Nothing in the Complaint suggests that Plaintiff took the assignment for any other reason. *See Justinian Capital SPC*, 28 N.Y.3d at 163 (holding that champerty statute was violated

---

[2] There is a divergence in authority regarding whether an assignment that is voided as champertous deprives the plaintiff of standing to bring the claim or renders the claim itself meritless.  *Compare Phoenix Light SF Ltd. v. U.S. Bank N.A.*, No. 14-CV-10116, 2020 WL 1285783, at *16 (S.D.N.Y. Mar. 18, 2020) (voiding an assignment as champertous and finding that the plaintiffs therefore lacked prudential and Article III standing); *S'holder Representative Servs. LLC v. Scribble Techs. Inc.,* No. 17-CV-2056 (PKC), 2018 WL 2356659, at *3 (S.D.N.Y. Mar. 30, 2018) (considering defendant's argument that plaintiff lacks standing because the purported assignment violates New York champerty laws as a challenge to Article III standing) *with House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*, No. 13-CV-519, 2015 WL 5190432, at *7 (S.D.N.Y. Sept. 4, 2015) (holding that CDO issuer's assignment of claims to an indenture trustee did not raise an Article III issue, only a "real party in interest" standing issue). Accordingly, if the Court does not dismiss the Complaint under Rule 12(b)(1), the Complaint should be dismissed under Rule 12(b)(6).

[3] Indeed, the connection between Plaintiff's counsel and the Assignor is believed to predate the assignment.  Plaintiff's counsel has actually been a client of the Assignor and promoted its business on the Internet.  Accordingly, there is no way that Plaintiff and its counsel could meet the suitability and related requirements to certify a class in this matter, but that issue should never have to be reached.

because assignee commenced an action within days of being assigned certain notes, and there was no suggestion that the assignee had acquired the notes "for any purpose other than the lawsuit it commenced almost immediately.").  Indeed, it is unclear what rights, interest, or obligations Plaintiff could have been assigned aside from the right to pursue this suit, as Assignor no longer has an active subscription with Trustpilot.  *See BSC Assocs., LLC v. Leidos, Inc.*, No. 3:14-cv-00645, 2015 WL 667853, at *9 (N.D.N.Y. Feb. 17, 2015) (granting defendant's motion to dismiss under § 489 in part on the ground that plaintiff received "this cause of action from [a related nonparty] absent any related obligations or assets.").

Because the assignment was effectively "nothing but a hunting license" that allowed Plaintiff to bring these claims, "it is champertous and therefore void."  *Refac Int'l, Ltd. v. Lotus Dev. Corp.,* 131 F.R.D. 56, 58 (S.D.N.Y. 1990) (holding that, under Section 489, an agreement was champertous where the assignee was granted a 5% interest in a computer software patent exclusively for the purpose of litigating a claim on behalf of the assignor as a "surrogate plaintiff"); *Am. Rest. China Mfrs. Ass'n, Inc. v. Corning Glass Works*, 198 N.Y.S.2d 366, 370-71 (Sup. Ct. Erie Co. 1960) (dismissing complaint where plaintiff accepted an assignment of a cause of action for the purpose of commencing suit on such assigned cause.)

Accordingly, all of Plaintiff's claims are barred under New York Judiciary Law § 489 and should be dismissed.

## II.     PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE AGREEMENT IS UNAMBIGUOUS AND TRUSTPILOT ENGAGED IN NO DECEPTIVE ACT

Even if the assignment was not champertous, the Complaint fails to state a claim.  All of plaintiff's claims are premised upon the erroneous assertion that Trustpilot had a duty to send customers reminder e-mails about auto-renewal and deceived its customers by failing to comply

with the Agreement's auto-renewal terms.  (Compl. ¶ 4.)  Plaintiff fails to allege that Trustpilot

had any contractual obligation to send reminder e-mails – because there is none.

      As Judge Posner explained in interpreting a substantially similar automatic renewal

provision, when a contract does not require reminder emails, it does not assign "responsibility to

[the defendant] to track customers' renewal dates[.]"  *Cafferty, Clobes, Meriwether & Sprengel,*

*LLP v. XO Commc'ns Servs., LLC*, 850 F.3d 840, 843 (7th Cir. 2017).  Rather, if "every

customer is informed that the contract automatically renews at the end of the customer's term of

service unless that renewal is cancelled by the customer at least 30 days before the end of the

term" – as they were here – "it is child's play for the customer to keep track of the deadline (30

days before the end of the term) for declining – without any penalty – to renew the contract."  *Id.*

at 842-42.  As discussed below, this Court should reach the same result.

      **A.**     **Plaintiff Fails to State a Claim for Breach of Contract**

      Plaintiff fails to plead a claim for a breach of contract because Plaintiff cannot allege that

there is a duty imposed by the Agreement with which Trustpilot did not comply.  In order to

plead a breach of contract, Plaintiff must allege:  "(1) the existence of a contract;

(2) performance by the party seeking recovery; (3) nonperformance by the other party; and

(4) damages attributable to the breach."  *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 402

(S.D.N.Y. 2012) (internal quotation marks and citation omitted).  "The nonperformance element

of a breach of contract claim requires that 'the complainant must plead the terms of the

agreement upon which defendant's liability rests.'"  *Id.* (quoting *Kaplan v. Aspen Knolls*

*Corp.,* 290 F. Supp. 2d 335, 337 (E.D.N.Y.2003)).

      Plaintiff did not – because it cannot – allege any term in the Agreement that imposed a

duty to send *any* renewal-reminder e-mails to customers, let alone from a particular e-mail

domain.  This indisputable fact alone is fatal to Plaintiff's claim.  *See Cafferty*, 850 F.3d at 843;

*Chasman v. JP Morgan Chase Bank, NA*, No. 18 CIV. 6681 (NRB), 2020 WL 207784, at *3 (S.D.N.Y. Jan. 14, 2020) (holding that the plaintiffs "failed to plead their breach of contract claim" where "plaintiffs do not identify any contractual provision that defendant allegedly violated[.]").

Plaintiff nonetheless alleges that Trustpilot improperly imposed another year's subscription:  (a) "despite the fact that the prior Subscriptions did not permit Trustpilot to automatically renew for another year's Subscription" and (b) "at a rate greater than that of prior Subscriptions."  (Compl. ¶ 85(a)-(b).)  However, the terms of the Agreement expressly permit *both* actions by Trustpilot:

> On the last day of the Initial Term and on each subsequent anniversary of that date, ***the Agreement will automatically be renewed at Trustpilot's then-current, standard non-discounted price*** for an additional period of same duration as the Initial Term in accordance with the terms referenced to in the applicable Order Form, unless one of the parties notifies the other party of its intent not to renew no less than thirty (30) days prior to the end of the then-current term.  Customer's notification of non-renewal must be made to: support@trustpilot.com.  Any such non-renewal shall be deemed to be a termination of the Agreement for the purposes hereof.

(Silverstein Decl. Ex. 2 § 7.2) (emphasis added).

Where a defendant complies with the terms of an auto-renewal provision, there is no breach of contract.  In *Mazzola*, Judge Koeltl held that the "plaintiff does not and cannot allege that the defendants failed to comply with any of the billing terms disclosed in the Terms of Use" as "[t]he plaintiff does not allege that by continuing to bill the plaintiff $29.95 each month until the plaintiff either canceled her subscription or her credit card, [defendant] was doing anything other than complying with the automatic renewal term of its Terms of Use."  *Mazzola*, 849 F. Supp. 2d at 402.  Likewise, Plaintiff fails to allege that Trustpilot breached the Agreement.[4]

---

[4] Judge Koeltl also found that that the plaintiff in *Mazzola* stated a separate claim for breach of the agreement because the defendant allegedly "prevented the plaintiff from canceling her

Rather than impose a duty on Trustpilot, the Agreement specifically places the duty to monitor auto-renewal and cancel on the Assignor. "'[W]here the parties to a contract have agreed to a written termination clause, it must be enforced as written.'" *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997 (JPO), 2016 WL 236249, at *7 (S.D.N.Y. Jan. 20, 2016) (citing *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996)). The Agreement states that all Assignor had to do to cancel the service was send an e-mail to support@trustpilot.com at least 30 days prior to the end of the contract term. (Silverstein Decl. Ex. 2 § 7.2.) The Order Form electronically signed by Assignor on November 20, 2017, also states the "Next renewal date." (Silverstein Decl. Ex 3.)

As Judge Posner observed in *Cafferty,* "it is child's play for the customer to keep track of the deadline (30 days before the end of the term) for declining – without any penalty – to renew the contract." 850 F.3d at 842. The district court in *Cafferty* likewise held: "[plaintiff] has totally ignored the lack of diligence that it must ascribe <u>to itself</u> in order to lay the blame at [defendant's] doorstep for the manner in which the Agreement was renewed for no fewer than three additional three-year terms. It is hard to explain why a business entering into a long-term contract with an automatic renewal provision would fail to set a reminder for itself." *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*, 190 F. Supp. 3d 765, 770 (N.D. Ill. 2016), *aff'd sub nom. Cafferty, Clobes, Meriwether & Sprengel, LLP*, 850 F.3d 840.

---

membership and avoiding subsequent charges." *Mazzola*, 849 F. Supp. 2d at 403. By contrast, Plaintiff alleges only that Trustpilot sent the reminder e-mail and the e-mail went to junk mail. (Compl. ¶ 4.) Plaintiff does not allege that Assignor then tried to cancel and Trustpilot refused to do so or that Trustpilot otherwise did not follow the contractual cancellation procedures.

The same is true here.  Trustpilot complied with the Agreement's terms.  Trustpilot is not at fault for Assignor's failure to read the Agreement and exercise reasonable diligence in tracking its own renewal date.  Accordingly, Plaintiff fails to state a claim for breach of contract.

### B.    Plaintiff Fails to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiff asserts that Trustpilot breached the implied covenant of good faith and fair dealing by entering into subscriptions with business customers prior to the customers receiving renewal-reminder e-mails, and by using deceptive means to impose another year's subscription upon customers.  (Compl. ¶¶ 81-82.)  This claim fails because it impermissibly seeks to rewrite the Agreement's unambiguous terms and is duplicative of Plaintiff's breach of contract claim.

The implied duty of good faith and fair dealing cannot be used to rewrite the terms of a contract.  "[T]he implied covenant of good faith and fair dealing does not provide a court *carte blanche* to rewrite the parties' agreement . . . a court cannot imply a covenant inconsistent with terms expressly set forth in the contract."  *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989).  "Nor can a court imply a covenant to supply additional terms for which the parties did not bargain."  *Id*. (citing *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F. Supp. 1504, 1519 (S.D.N.Y.1989)).

Here, Section 7.2 of the Agreement expressly permitted Trustpilot to renew automatically subscriptions "at the then-current, standard non-discounted rate for an additional period of the same duration as the Initial Term" of the subscription.  (Silverstein Decl. Ex. 2 § 7.2.)  Accordingly, Trustpilot could not breach the covenant of good faith and fair dealing by automatically renewing a contract that Trustpilot had a contractual right to renew by the Agreement's plain terms.

Nor was sending renewal-reminder e-mails from the @trustpilot.net domain a breach of the implied covenant of good faith and fair dealing as the Agreement did not obligate Trustpilot to send a reminder e-mail. *Hartford Fire Ins. Co.*, 723 F. Supp. at 991 ("a court cannot imply a covenant inconsistent with terms expressly set forth in the contract"); *In re Residential Capital, LLC*, 531 B.R. 25, 52 (Bankr. S.D.N.Y. 2015) (dismissing good faith claim because plaintiff could not create an obligation under the implied covenant that defendant did not otherwise have under the express terms of the contract).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should also be dismissed because it is duplicative of Plaintiff's breach of contract claim. "New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" *Underdog Trucking, LLC, Reggie Anders*, 2010 WL 2900048, at *6 (dismissing claim for a breach of the implied covenant of good faith and fair dealing where the allegations for the two claims were based on the same facts). "The conduct alleged in the two causes of action need not be identical in every respect," as long as they arise from the same operative facts. *Mill Fin., LLC v. Gillett*, 992 N.Y.S.2d 20, 25 (2014)

Plaintiff bases its claims for breach of the implied covenant on the same factual allegations on which Plaintiff's breach of contract claim is based. Plaintiff alleges in both claims that Trustpilot entered into contracts with customers prior to the customers receiving renewal-reminder e-mails, and that Trustpilot used deceptive means to "impose another year's subscription" on class members. (*Compare* Compl. ¶¶ 81-82 *with* ¶¶ 84-85.) Because the claim for breach of the implied duty of good faith and fair dealing is based on the "same alleged

deceptive practices" as the breach of contract claim, the claim for breach of the implied covenant

should be dismissed.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

### C.    Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim relies on the allegation that Trustpilot was enriched by

"imposing another year's Subscription via the Auto-Enroll emails."  (Compl. ¶ 99.)  However, a

cause of action for unjust enrichment will not lie where there is a valid written contract

governing the dispute.  It is "well-settled in New York . . . that where there is a valid and

enforceable written contract governing a particular subject matter, recovery in quasi-contract for

acts relating to the same subject matter is precluded."  *SCM Grp., Inc. v. McKinsey & Co.*,

No. 10 CIV. 2414 (PGG), 2011 WL 1197523, at *8 (S.D.N.Y. Mar. 28, 2011).  Here, Plaintiff

alleges that Assignor "[a]cquired a Trustpilot Subscription on November 20, 2017," thereby

entering into a contract with Trustpilot.  (Compl. ¶ 19(a); *see also id.* ¶ 81 ("Trustpilot entered

into contracts in the form of annual Subscriptions")).

First, Plaintiff's claim for unjust enrichment is impermissibly duplicative of its breach of

contract claim.  *Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys.,*

*U.S.A., Inc.*, No. 20 CIV. 4117 (AKH), 2021 WL 149027, at *5 (S.D.N.Y. Jan. 15, 2021)

("Plaintiff's unjust enrichment claim, which seeks the same relief as its breach of contract claim,

is dismissed as duplicative"); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 683

(S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim

when the parties did not dispute the validity of the contracts).

Second, and as discussed above, the Assignor assented to the terms of the Agreement,

which specifically contemplates automatic renewal of the subscription.  (Silverstein Decl. Ex. 2

§ 7.2, Ex. 3.)  Plaintiff's unjust enrichment claim thus fails because it "must rest on a *lack* of an

express agreement between the parties.  The presence of an express contract is fatal to recovery

14

on a quasi-contract theory." *Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*, No. 7:11-CV-2563, 2011 WL 3628858, at *2 (S.D.N.Y. Aug. 16, 2011) (dismissing unjust enrichment claim because it "cannot be based on" "performing . . . pursuant to the Agreement.") (emphasis added); *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) (holding that the unjust enrichment claim is "not viable" against defendant "because the express terms of plaintiff's valid insurance contracts govern [defendants'] obligations to plaintiff").

Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

### D.   Plaintiff Fails to State a Claim Under New York GBL § 349 and GOL § 5-903

To state a claim for deceptive business practices under GBL § 349, Plaintiff must also allege "that the challenged act or practice was a consumer-oriented act or practice that is misleading in a material way, and caused injury to the plaintiff." *Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 60 (2d Dep't 2004). To state a claim for GOL § 5-903, Plaintiff must allege facts sufficient to demonstrate that the contract at issue "f[alls] within the scope" of the statute. *Donald Rubin, Inc. v. Schwartz*, 559 N.Y.S.2d 307, 310 (1990). Plaintiff's claim fails under both statutes.

> 1.   Plaintiff fails to state a claim under GBL § 349 because Plaintiff fails to allege Trustpilot engaged in a deceptive business practice or consumer oriented misconduct.

Plaintiff alleges that Trustpilot engaged in a deceptive business practice by automatically renewing its customers' subscriptions. (Compl. ¶¶ 14-15, 89.) However, under GBL § 349, no deceptive business practice exists where, as here, the conduct complained of was "specifically provided for by the parties' [agreement] and thus was fully disclosed." *Ludl*, 775 N.Y.S.2d at 60-61 ("The plaintiff alleged that the defendant engaged in a deceptive business practice by including an automatic renewal provision in the parties' lease for business equipment. . . .

[B]ecause the conduct complained of is specifically provided for by the parties' lease and thus was fully disclosed, such conduct is not a deceptive business practice within the meaning of General Business Law § 349(a).").

As discussed above in Section II.A, the Agreement contains an automatic renewal provision that specifically allows for the automatic renewal of a customer's subscription at the "then-current" rate. (Silverstein Decl. Ex. 2 § 7.2.) Plaintiff fails to plead any action taken by Trustpilot to renew customer's subscriptions that was not explicitly permitted by the Agreement's terms. That defect alone is fatal to Plaintiff's claim.

For example, in *Asimov v. Trident Media Grp., LLC*, 999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014), the court analyzed a similar auto-renewal provision. The agreement provided that it "automatically shall be extended for successive additional periods of two (2) years each, unless the party wishing to terminate this Agreement gives written notice of termination to the other[.]" *Id.* at *1. The court held that "a GBL § 349 claim does not lie when the alleged deceptive practice, as here, was a matter explicitly disclosed in and permitted under the parties' written agreement." *Id.* at *4. Because Plaintiff has not alleged that a deceptive business act occurred, its GBL § 349 claims should be dismissed.

Plaintiff also fails to plead that the conduct at issue – automatically renewing Plaintiff's subscription service – is "consumer-oriented" within the meaning of GBL § 349. Indeed, "consumer-protection regimes, as set forth in the two New York statutes, do not apply to private contract disputes relating to business-to-business transactions between sophisticated parties, except in severely limited circumstances where the conduct at issue threatens to injure the public at large[.]" *Radiology and Imaging Specialists of Lakeland, P.A.*, 2021 WL 149027, at *5; *see also Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 107 (1st Dep't 2000) (holding that conduct

"does not fall within the parameters of [GBL § 349]" where the advertising service at issue was "by definition, a commodity available to businesses only").

Here, the complaint specifically alleges that "Trustpilot sells subscriptions to businesses. . . ."  (Compl. ¶ 3; *see also id.* "Subscriptions provide its *business* customers") (emphasis added).  Accordingly, the Agreement is a business-to-business contract, and the automatic renewal of the subscription service is conduct aimed solely at the business that is contractually bound.[5]  Where "the acts complained of are limited to business rather than consumer leases, and the conduct complained of did not carry over to consumer transactions" a cause of action for deceptive business practices under GBL § 349 will not lie.  *Ludl*, 775 N.Y.S.2d at 397-98 (holding that the automatic renewal of contract between businesses was "limited to business"); *see also Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 450 (S.D.N.Y. 2004) (dismissing GBL § 349 claim because the plaintiff was a "business, not an individual who purchased goods and services for personal, family, or household use.").  Plaintiff's GBL § 349 claim should likewise be dismissed because the Agreement is a business-to-business contract.

    2.    <u>Plaintiff fails to state a claim under GOL § 5-903 because the subscription service does not pertain to real or personal property.</u>

Plaintiff alleges that Trustpilot's automatic renewal of the subscription service violates GOL § 5-903.  (Compl. ¶ 88.)  However, GOL § 5-903(2) states that the statute is applicable to contracts "for service, maintenance or repair to or for any *real or personal property*…"

---

[5] Plaintiff also alleges that the conduct at issue is consumer-oriented because automatically renewing the subscriptions means Trustpilot reviews "continue[] to appear online directed at consumers . . . to a greater extent than they would have been."  (Compl. ¶ 90.)  But renewing the business' subscriptions such that the reviews remain online is still business, not consumer, conduct.  *Reit v. Yelp!, Inc.*, 907 N.Y.S.2d 411, 415 (Sup. Ct. N.Y. Co. 2010) ("Reit's allegation that Yelp deletes postings for the purpose of selling advertising, if true, is business conduct, not consumer oriented conduct.").

(emphasis added.)  Where, as here, "the services rendered are 'merely of a consulting, analytical or administrative nature' GOL § 5-903(2) is inapplicable." *Asimov*, 999 N.Y.S.2d at *3 (internal quotation marks and citation omitted).

Plaintiff admits that Trustpilot's subscription service is of a consulting, analytical, or administrative nature, and does not pertain to real or personal property.  According to the Complaint, Trustpilot's "annual Subscriptions provide its business customers access to consumer data" and other benefits including "consumer insight data generated by the Website's activity[.]" (Compl. ¶ 2.)  The Agreement also lists Trustpilot's services to include, *inter alia*, (1) "a seller review invitation," which sends an invitation to the businesses' customers to post reviews of their experiences and (2) access to Trustpilot's "product review invitation service," which allows the customer's customers to receive e-mail notifications to enter a review upon the businesses' activation of the subscription service.  (Silverstein Decl. Ex. 2 §§ 2.1.2, 2.1.3.)

None of the services alleged in the Complaint or contained in the Agreement pertain to real or personal property.  Accordingly, Plaintiff cannot state a claim under GOL § 5-903.  *See, e.g.*, *Donald Rubin, Inc. v. Schwartz*, 559 N.Y.S.2d 307, 310 (1990) (holding that a contract containing an automatic renewal provision for a trustee to administer services was not "real or personal property" for purposes of GOL § 5-903).

### E. Plaintiff Cannot State a Claim for Violations of Other States' Unfair Business Practices Statutes

Finally, Plaintiff alleges violations of sixteen other states' and the District of Columbia's consumer protection statutes.  (Compl. ¶ 96 (a)-(q).)  However, where a contract contains a choice of law provision with broad language "indicating that any controversy 'arising out of or relating to' the agreement would be governed by the laws of New York," "the parties are bound by New York law with regard to non-contractual causes of action[.]" *Rice v. Scudder Kemper*

18

*Invs., Inc.*, No. 01 CIV. 7078 (RLC), 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d Cir. 2006).

The Agreement contains such a choice of law clause.  Section 16.1 of the Agreement states, "The Agreement, and any disputes directly or indirectly arising from or related to the Agreement, shall be governed exclusively by the laws of the State of New York, without regard to the conflict of law provisions thereof (Except Section 5-1401 of the New York General Obligations Laws)."  (Silverstein Decl. Ex. 2 § 16.1.)

Judge Hellerstein's recent decision in *Radiology and Imaging Specialists of Lakeland, P.A* is instructive.  Judge Hellerstein dismissed plaintiff's claim for violation of the Florida Deceptive and Unfair Trade Practices Act because the agreement "contain[ed] a broad choice-of-law provision selecting New York law as the governing law for 'any claims arising under or relating in any way' to the agreement."  *Radiology and Imaging Specialists of Lakeland*, 2021 WL 149027, at *5; *see also Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D.N.Y. 2016) ("The Court finds that the New York choice-of-law provision contained in the [] Agreements prevents plaintiff's assertion of North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims[.]").  Accordingly, the Court should dismiss Plaintiff's claim for violations of other states' and the District of Columbia's consumer protection statutes for this reason alone.

Even if the Agreement lacked a New York choice of law clause, Plaintiff's claim would still fail.  Although the specifics of each state statute vary, "[t]he modern consumer protection statutes in effect in all the states prohibit deceptive acts or practices in one form or another."

§ 128 STATE INTERPRETATIONS, CONSUMER LAW SALES PRACTICES AND CREDIT REGULATION.[6]

As discussed above, because the Agreement spells out the how to unsubscribe, there is no

deceptive act, unfair practice, unlawful conduct, or violation of public policy.  *See, e.g.*, *Tar Heel*

*Indus., Inc. v. E.I. duPont de Nemours & Co*., 91 N.C. App. 51, 57 (1988) (not unfair or

deceptive to exercise the contract's termination clause); *Michael Todd, et al., v. Xoom Energy*

*Maryland, LLC, et al.*, No. 8:15-CV-154, 2015 WL 10714486 (D. Md. Apr. 25, 2015)

("Generally speaking, when a party acts within its contractual rights, it does not violate the

NCUDTPA"); *Avery v. State Farm Mut. Auto. Ins. Co.*, 296 Ill. Dec. 448, 491 (2005) ("A breach

of contractual promise, without more, is not actionable under the Consumer Fraud Act.").

Accordingly, the claim fails for this additional reason.

## III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

No amendment can cure the Complaint's deficiencies.  The Court may dismiss with

prejudice or deny leave to amend where, as here, a plaintiff cannot cure the pleading deficiency

and any proposed amendment would be futile.  *See, e.g.*, *Yak v. BiggerPockets, L.L.C.*, No. 19-

CV-05394 (PMH), 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (finding that the facts

alleged would render an amendment to the unjust enrichment claim futile because there was "a

valid and enforceable contract."); *In re CCT Commc'ns, Inc.*, No. 07-10210 (SMB), 2008

---

[6] Ariz. Rev. Stat. Ann. § 44-1522(a) ("deceptive or unfair act"); Cal. Bus. & Prof. Code § 17200 ("unfair" and "deceptive"); Conn. Gen. Stat. § 42-110b ("unfair or deceptive acts"); D.C. Code § 28-3904 ("unfair or deceptive"); Fla. Stat. § 501.202 ("deceptive and unfair trade practices"); Haw. Rev. Stat § 481A-3 ("deceptive trade practice"); 815 Ill. Comp. Stat. 505/2 ("unfair or deceptive acts"); Minn. Stat. § 325F. 69 ("deceptive practice"); N.J. Stat. Ann. § 56:8-2 ("deception" or "unlawful conduct"); N.M. Stat. Ann. § 57-12-3 ("unfair or deceptive trade practices); N.C. Gen. Stat. § 75-1.1 ("unfair or deceptive acts"); N.D. Cent. Code. § 51-15-02 ("deceptive act or practice"); Or. Rev. Stat. § 646.605 ("unlawful trade practice"); Utah Code Ann. § 13-11-4 ("deceptive act or practice"); Vt. Stat. Ann. Tit. 9 § 2453 ("unfair or deceptive acts"); Wash. Rev. Code § 19.86.020 ("unfair or deceptive acts"); Wis. Stat. § 100.18 ("deceptive").

WL 2705471, at *14 (Bankr. S.D.N.Y. July 2, 2008) (finding the same because a cause of action

for a breach of implied covenant of good faith and fair dealing cannot be used to "rewrite" "the

unambiguous terms" of the contract); *Rephen v. Gen. Motors Corp.*, No. 15-CV-5206 (NSR),

2016 WL 4051869, at *5 (S.D.N.Y. July 26, 2016) (holding that amendment of GBL § 349

would be futile because correspondence regarding service subscription would not mislead a

reasonable customer); *Rothbaum v. Bank of Am., N.A.*, No. 16-CV-02387 (ALC), 2017

WL 253068, at *5 (S.D.N.Y. Jan. 19, 2017) (holding that amendment would be futile "based on

the unambiguous terms of the document underlying his breach of contract claim.").

Here, Trustpilot had no duty to send a reminder e-mail and complied with the express

terms of a written and enforceable contract.  Plaintiff cannot plead around these self-evident

truths.  Accordingly, the Court should dismiss the Complaint with prejudice.[7]

## CONCLUSION

The Agreement and the law are clear.  Trustpilot had no duty to send an auto-renewal

reminder e-mail.  If the Assignor wanted to unsubscribe, all it had to do was read the Agreement

and follow it.  The Assignor did not do so and instead assigned its meritless claims to Plaintiff

solely for the purposes of bringing this litigation.  This Court should dismiss the Complaint with

prejudice and award Trustpilot such other and further relief as it deems just and proper.

---

[7] Even if Plaintiff's allegations were to survive this motion to dismiss – which they should not –
Plaintiff's claims cannot be resolved on a class-wide basis.  Individual inquiries would be
necessary to determine which proposed class members wanted their subscriptions to be
automatically renewed and/or continued to use their subscription after renewal as these
subscribers cannot recover for unjust enrichment. *See, e.g.*, *Vaccariello v. XM Satellite Radio,
Inc.*, 295 F.R.D. 62, 75-76 (S.D.N.Y. 2013) (denying class certification to subscriber to satellite
radio filed putative class action against provider alleging that its practice of automatically
renewing customers' subscriptions was deceptive).

Dated: New York, New York
       March 12, 2021

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP


    /s/ *Andrew B. Kratenstein*
Andrew B. Kratenstein
Caroline A. Incledon
Kierstin S. Fowler
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

William P. Donovan, Jr. (admitted *pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, California
(310) 788-4121


*Attorneys for Defendant Trustpilot, Inc.*