# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTPILOT DAMAGES LLC, and TUMBACO INC. d/b/a QUASAR EXPEDITIONS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRUSTPILOT INC., <br><br> *Defendant*. | Civil Action No. 1:21-cv-00432-JSR |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT  TRUSTPILOT, INC.'S
### MOTION TO DISMISS THE AMENDED COMPLAINT

McDERMOTT WILL & EMERY LLP

Andrew B. Kratenstein
Caroline A. Incledon
Kierstin S. Fowler
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

William P. Donovan, Jr. (admitted *pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, California
(310) 788-4121

*Attorneys for Defendant Trustpilot, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

LEGAL STANDARD.........................................................................................................7

ARGUMENT ...................................................................................................................9

    I.      PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE
             AGREEMENT IS UNAMBIGUOUS AND TRUSTPILOT
             ENGAGED IN NO DECEPTIVE ACT ...............................................................9

           A.    Plaintiffs Fail to State a Claim for Breach of Contract..............................9

           B.    Plaintiffs Fail to State a Claim for Breach of the Implied
                 Duty of Good Faith and Fair Dealing ......................................................12

           C.    Plaintiffs Fail to State a Claim for Unjust Enrichment .............................14

           D.    Plaintiffs Fail to State a Claim Under New York GBL
                 § 349 and GOL § 5-903 ........................................................................15

                 1.    Plaintiffs fail to state a claim under GBL § 349
                         because Plaintiffs fail to allege Trustpilot engaged
                         in a deceptive business practice or consumer-
                         oriented misconduct ....................................................................16

                 2.    Plaintiffs fail to state a claim under GOL § 5-903
                         because the subscription service does not pertain to
                         real or personal property .............................................................18

            E.    Plaintiffs Cannot State a Claim for Violations of Other
                 States' Unfair Business Practices Statutes ................................................19

    II.     PLAINTIFF TRUSTPILOT DAMAGES LLC LACKS
             STANDING BECAUSE THE PURPORTED ASSIGNMENT IS
              VOID AS CHAMPERTOUS..........................................................................22

    III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED
             WITH PREJUDICE ....................................................................................24

CONCLUSION.............................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
144 A.D.3d 122 (1st Dep't 2016) ...........................................19

*Am. Rest. China Mfrs. Ass'n, Inc. v. Corning Glass Works*,
198 N.Y.S.2d 366 (Sup. Ct. Erie Co. 1960)..................................24

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)................................................8

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003)................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................7

*Asimov v. Trident Media Grp., LLC*,
999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014) .............................. 16-18

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)................................................8

*Avery v. State Farm Mut. Auto. Ins. Co.*,
296 Ill. Dec. 448 (2005)..................................................21

*Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*,
No. 7:11-CV-2563, 2011 WL 3628858 (S.D.N.Y. Aug. 16, 2011)................15

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
94 N.Y.2d 726 (2000) .....................................................22

*BSC Assocs., LLC v. Leidos, Inc.*,
No. 3:14-cv-00645, 2015 WL 667853 (N.D.N.Y. Feb. 17, 2015)................23

*Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*,
190 F. Supp. 3d 765 (N.D. Ill. 2016), *aff'd*, 850 F.3d 840 (7th Cir. 2017) ...........................12

*Cafferty, Clobes, Meriwether & Sprengel, LLP v. XO Commc'ns Servs., LLC*,
850 F.3d 840 (7th Cir. 2017) ...................................9, 10, 12

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
208 F. Supp. 3d 494 (E.D.N.Y. 2016) .....................................20

*In re CCT Commc'ns, Inc.*,
  No. 07-10210 (SMB), 2008 WL 2705471 (Bankr. S.D.N.Y. July 2, 2008) ..........................24

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...........................................................................................8

*Chasman v. JP Morgan Chase Bank, NA*,
  No. 18 CIV. 6681 (NRB), 2020 WL 207784 (S.D.N.Y. Jan. 14, 2020)................................10

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)............................................................................................8

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013).........................................................................................14

*Cruz v. NYNEX Info. Res.*,
  703 N.Y.S.2d 103 (1st Dep't 2000) ..............................................................................17

*Denenberg v. Rosen*,
  897 N.Y.S.2d 391 (1st Dep't 2010) ..............................................................................15

*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015)............................................................................15

*Donald Rubin, Inc. v. Schwartz*,
  559 N.Y.S.2d 307 (1990)........................................................................................16, 19

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
  328 F. Supp. 2d 443 (S.D.N.Y. 2004)............................................................................18

*Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*,
  No. 13-CV-8997 (JPO), 2016 WL 236249 (S.D.N.Y. Jan. 20, 2016)....................................11

*GemShares, LLC v. Kinney*,
  No. 17 CIV. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017)......................................8

*Gowen v. Helly Nahmad Gallery, Inc.*
  77 N.Y.S.3d 605 (Sup. Ct. N.Y. Co. 2018), *aff'd*, 95 N.Y.S.3d 62 (2019) ............................22

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989) ...............................................................................13

*House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*,
  No. 13-CV-519, 2015 WL 5190432 (S.D.N.Y. Sept. 4, 2015).............................................22

*Justinian Capital SPC v. WestLB AG*,
  28 N.Y.3d 160 (2016) .............................................................................................22-23

*Long Island Lighting Co. v. Transam. Delaval Inc.*,
    646 F. Supp. 1442 (S.D.N.Y. 1986)...............................................................8

*Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*,
    775 N.Y.S.2d 59 (2d Dep't 2004) ........................................................ 15-18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................8

*Mazzola v. Roomster Corp.*,
    849 F. Supp. 2d 395 (S.D.N.Y. 2012)............................................... 10-11

*Michael Todd, et al., v. Xoom Energy Maryland, LLC, et al.*,
    No. 8:15-CV-154, 2015 WL 10714486 (D. Md. Apr. 25, 2015)....................21

*Mill Fin., LLC v. Gillett*,
    992 N.Y.S.2d 20 (2014)......................................................................14

*Ministers & Missionaries Ben. Bd.* v. *Snow*,
    26 N.Y.3d 466 (2015), *reargument denied*, 26 N.Y.3d 1136 (2016) ......................19

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001).....................................................25

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*,
    No. 14-CV-10116, 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) .......................22

*Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys.,*
    *U.S.A., Inc.*,
    No. 20 CIV. 4117 (AKH), 2021 WL 149027 (S.D.N.Y. Jan. 15, 2021) ...................15, 17, 20

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
    131 F.R.D. 56 (S.D.N.Y. 1990) .............................................................24

*Reit v. Yelp!, Inc.*,
    907 N.Y.S.2d 411 (Sup. Ct. N.Y. Co. 2010) ..........................................17

*Rephen v. Gen. Motors Corp.*,
    No. 15-CV-5206 (NSR), 2016 WL 4051869 (S.D.N.Y. July 26, 2016)................24

*In re Residential Capital, LLC*,
    531 B.R. 25 (Bankr. S.D.N.Y. 2015)......................................................13

*Rice v. Scudder Kemper Invs., Inc.*,
    No. 01 CIV. 7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003),
    *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d
    Cir. 2006) ..........................................................................................19

*Rothbaum v. Bank of Am., N.A.*,
    No. 16-CV-02387 (ALC), 2017 WL 253068 (S.D.N.Y. Jan. 19, 2017)..................................25

*S'holder Representative Servs. LLC v. Scribble Techs. Inc.*,
    No. 17-CV-2056 (PKC), 2018 WL 2356659 (S.D.N.Y. Mar. 30, 2018)................................22

*SCM Grp., Inc. v. McKinsey & Co.*,
    No. 10 CIV. 2414 (PGG), 2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011).............................14

*Solution Z v. Alma Lasers, Inc.*,
    No. 11-CV-21396, 2013 WL 12246356 (S.D. Fla. Jan. 22, 2013) .........................................21

*Staehr v. Mack*,
    No. 07-CV-10368, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011) ...........................................9

*Tar Heel Indus., Inc. v. E.I. duPont de Nemours & Co.*,
    91 N.C. App. 51 (1988) .........................................................................................................21

*Underdog Trucking, LLC, Reggie Anders v. Verizon Services Corp.*,
    No. 09-CV-8918, 2010 WL 2900048 (S.D.N.Y. July 20, 2010) .............................................13

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) .............................................................................................25

*Willard v. Home Depot, U.S.A., Inc.*,
    No. 5:09-cv-110/RS-MD, 2009 WL 1884395 (N.D. Fla. June 29, 2009) ..............................21

*Yak v. BiggerPockets, L.L.C.*,
    No. 19-CV-05394 (PMH), 2020 WL 5505351 (S.D.N.Y. Sept. 10, 2020) ...........................24

*Zlotnick v. Premier Sales Grp., Inc.*,
    431 F. Supp. 2d 1920 (S.D. Fla. 2006), *aff'd,* 480 F.3d 1281 (11th Cir. 2007)......................21

**Statutes**

Ariz. Rev. Stat. Ann. § 44-1522(a) ................................................................................................20

Cal. Bus. & Prof. Code § 17200 ...................................................................................................20

Conn. Gen. Stat. § 42-110b............................................................................................................20

D.C. Code § 28-3904 .....................................................................................................................20

Fla. Stat. § 501.202 ........................................................................................................................20

Haw. Rev. Stat § 481A-3 ...............................................................................................................20

Ill. Comp. Stat. 505/2.....................................................................................................................20

Minn. Stat. § 325F ..................................................................................................20

N.C. Gen. Stat. § 75-1.1 ..........................................................................................20

N.J. Stat. Ann. § 56:8-2 ...........................................................................................20

N.M. Stat. Ann. § 57-12-3 .......................................................................................20

N.Y. Gen. Oblig. Law § 5-1401 ...............................................................................19

N.Y. Gen. Oblig. Law § 5-903.................................................................... 7, 15, 18-19

N.Y. Gen. Business Law § 349 .................................................................. 7, 15-18, 24

N.Y. Judiciary Law § 489 ............................................................................. 3, 22-24

Or. Rev. Stat. § 646.605 ...........................................................................................20

Utah Code Ann. § 13-11-4 ........................................................................................20

Vt. Stat. Ann. Tit. 9 § 2453 ......................................................................................20

Wash. Rev. Code § 19.86.020...................................................................................20

Wis. Stat. § 100.18...................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)............................................................................... 7-8, 23

Fed. R. Civ. P. 12(b)(6)............................................................................... 7-8, 23

## PRELIMINARY STATEMENT

This manufactured lawsuit against Trustpilot, Inc. ("Trustpilot") fails as a matter of law. At issue is the renewal of subscriptions for Trustpilot, a highly respected and successful company allowing users to post reviews of businesses on its website. Those businesses are able to contract with Trustpilot to collect and manage information concerning the reviews. The contract is memorialized in a Service Subscription Agreement (the "Agreement"), which clearly explains all of the subscription's terms, including the auto-renewal term.

Plaintiffs' claims fail because they contradict the unambiguous terms of the Agreement, which is governed by New York law. The Amended Complaint (ECF No. 24) is premised on the implausible assertion that Trustpilot duped its business customers into automatically renewing their subscriptions by designing an automatic renewal reminder e-mail that would go to the subscriber's "junk" e-mail folder. Even if Trustpilot had deliberately designed the reminder e-mail as a junk e-mail – which Trustpilot did not – Trustpilot had no duty (contractual or otherwise) to send a reminder e-mail in the first place.

Plaintiffs also conspicuously did not attach to their Amended Complaint or plead any terms of the Agreement – even after Trustpilot's motion to dismiss the original Complaint (ECF Nos. 18-19) identified the Agreement's terms that are fatal to Plaintiffs' claims. The Agreement specifically and lawfully tells customers in plain terms how they can unsubscribe from Trustpilot's service. The Agreement states that all a customer had to do to cancel was send an "unsubscribe" e-mail to a specified Trustpilot e-mail address at least 30 days before the end of the subscription's annual term. Had Plaintiffs simply read the Agreement – and perhaps set themselves a calendar reminder – they would have known exactly what they had to do to unsubscribe and when.

Neither Plaintiff claims that it unsubscribed within the required time period.  Indeed, as the Amended Complaint implicitly admits, the assignor of claims to Plaintiff Trust Pilot Damages LLC ("Assignor") automatically renewed the service in 2018 without incident or complaint.  New Plaintiff Tumbaco Inc. d/b/a Quasar Expeditions ("Quasar") renewed its subscription in 2017, auto-renewed in 2018 allegedly without its knowledge, but then affirmatively renewed its subscription twice more in 2019 and 2020.

No matter the explanations for this behavior, Plaintiffs' claims all fail as a matter of law because their premise – that Trustpilot fools customers into renewing their subscriptions without their consent – is belied by the Agreement's plain terms.  Those terms demonstrate that Trustpilot was under no obligation to send a reminder e-mail to its customers, who were specifically instructed as to how they could unsubscribe.  That Assignor, Quasar, or any other Trustpilot business customer may not have read the Agreement or exercised reasonable diligence in unsubscribing is no fault of Trustpilot's.

Finally, if any of Plaintiffs' claims survive – which they should not – at minimum Plaintiff Trustpilot Damages LLC should be dismissed as a Plaintiff.  In Trustpilot's original motion to dismiss, Trustpilot explained that Trustpilot Damages LLC is a dubious entity created for the express purpose of taking an assignment of the Agreement from the Assignor, an unidentified Trustpilot customer, who signed up with Trustpilot in 2017.  Trustpilot Damages LLC's name and its address (which it shares with Plaintiff's counsel) demonstrate that Trustpilot Damages LLC was formed to take the assignment and bring this lawsuit – a violation of New York State's champerty laws.  Indeed, in a tacit admission that Trustpilot Damages LLC is an improper Plaintiff, after Trustpilot moved to dismiss the original Complaint, Plaintiffs' counsel found Quasar and added it as a Plaintiff in the Amended Complaint.

Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice. If the Amended Complaint is not dismissed in its entirety, then at minimum Trustpilot Damages LLC should be dismissed as a Plaintiff.

## STATEMENT OF FACTS

On January 18, 2021, Plaintiff Trustpilot Damages LLC, an Iowa limited liability company, filed the original Complaint against Trustpilot and its parent company, Trustpilot A/S. (ECF No. 1.)  Trustpilot Damages LLC alleged that it was an assignee of all rights, title, and interest of all causes of action against Trustpilot possessed by Assignor.  (Compl. ¶ 17; *see also* Am. Compl. ¶ 17.)  On March 12, 2021, Trustpilot moved to dismiss the Complaint on the grounds that (1) Trustpilot Damages LLC failed to state a claim principally because all claims are barred by the Agreement's plain terms and (2) Trustpilot Damages LLC did not have standing because the assignment was champertous under New York Judiciary Law § 489.  (ECF No. 17.)

On March 23, 2021, Trustpilot A/S – which had never been served – was voluntarily dismissed.  (ECF No. 21.)  On April 8, 2021, Plaintiffs filed the Amended Complaint solely against Trustpilot.  (ECF No. 24.)  In response to Trustpilot's argument that the assignment to Trustpilot Damages LLC is champertous, Quasar was added as a Plaintiff.  The Amended Complaint makes no other substantive changes to the Complaint's allegations.

Together, Trustpilot Damages LLC and Quasar (collectively, "Plaintiffs") purport to represent a class of all persons or entities living in the United States who were sent an automatic renewal reminder e-mail from Trustpilot in the six years preceding the filing of the initial Complaint on January 18, 2021.  (Am. Compl.  ¶ 77.)  Trustpilot operates Trustpilot.com, a website that allows users to post reviews of businesses.  (*Id.* ¶¶ 1-2.)  Trustpilot also "sells subscriptions to businesses," which Plaintiffs allege provide Trustpilot's "business customers

access to consumer data and other purported benefits that Trustpilot claims to provide

(1) consumer-insight data generated by the Website's activity and (2) limited means of

controlling how consumer reviews about them are displayed online." (*Id.* ¶ 3.)

    To become a Trustpilot customer, businesses agree to the terms and conditions in the

Agreement.  (Declaration of Taylor Morgan Silverstein, dated April 13, 2021 ("Silverstein

Decl.") ¶¶ 6-7, 12.)  Plaintiffs allege that Assignor "[a]cquired a Trustpilot Subscription on

November 20, 2017."  (Am. Compl. ¶ 19(a).)  At that time, Trustpilot's subscription agreements

were subject to the November 2016 version of the Agreement.  (Silverstein Decl. ¶ 5, Ex. 2.)

    Assignor agreed to the terms of the Agreement using an Order Form, dated November 20,

2017.  (Silverstein Decl. ¶¶ 5-8, Ex. 2 § 1.1.)  To accept the Order Form, Assignor had to check a

box acknowledging that it "accepted the Service Subscription Agreement" and "agreed to the

terms and conditions in [Trustpilot's] Service Subscription agreement."  (Silverstein Decl. ¶ 6-7,

Ex. 3 at 3.)  The Order Form also contained a hyperlink to the Agreement.  (*Id.*)

    Newly-added Plaintiff Quasar acquired its subscription on March 30, 2016, at which time

it affirmatively consented to the terms in the August 2015 Service Subscription Agreement.

(Silverstein Decl. ¶ 9, Exs. 4 at 1; 5 § 1.1.)  Quasar does not allege that its subscription auto-

renewed in 2016 or 2017.  Quasar manually renewed its subscription on March 23, 2017.

(Silverstein Decl. ¶ 10, Ex. 6.)  At this time, Quasar agreed to the November 2016 version of the

Agreement.  (Silverstein Decl. ¶¶ 11-12, Ex. 2 § 1.1.)  Quasar alleges that it was sent an Auto-

Enroll Email on March 12, 2018 from the Trustpilot.net domain, and that its subscription auto-

renewed in 2018.  (Am. Compl. ¶ 21(c)-(d).)

    The November 2016 version of the Agreement governed Quasar's subscription until

May 30, 2019, when Quasar accepted a new Order Form and consented to Trustpilot's

April 2019 version of the Agreement.  (Silverstein Decl. ¶ 13, Exs. 7-8.)  Finally, when Quasar renewed its contract by accepting another Order Form on April 2, 2020, it agreed to the terms of the January 2020 version of the Agreement.  (Silverstein Decl. ¶ 14, Exs. 9-10.)  In other words, not once, but *twice* following the allegedly improper auto-renewal in 2018, Quasar affirmatively elected to continue its Trustpilot subscription pursuant to the terms of Trustpilot's then-existing Agreement.

Quasar agreed to the terms of the Agreement four times using an Order Form. (Silverstein Decl. Exs. 4, 6, 7, 9.)  Each Order Form required Quasar to confirm that it agreed to the terms in the then-current Agreement, and contained a hyperlink to the Agreement.  (*Id.*)  The second of these Order Forms, dated March 23, 2017, contained a hyperlink to the November 2016 version of the Agreement.  (Silverstein Decl. ¶ 12, Ex. 6 at 3.)  Like Assignor, Quasar affirmatively checked a box acknowledging that it "accepted the Service Subscription Agreement" and "agreed to the terms and conditions in [Trustpilot's] Service Subscription agreement."  *Id.*  This Agreement governed Quasar's subscription when it was auto-renewed in 2018.  After the auto-renewal in 2018, Quasar then manually renewed its subscription in 2019 and 2020.  (Silverstein Decl. ¶ 13-14, Exs. 7-10.)

Trustpilot's business subscriptions auto-renew each year unless cancelled or modified by a new Order Form and Agreement.  The auto-renewal feature is clearly disclosed in the Agreement.  Section 1.2 of the November 2016 Agreement – which, as discussed above, was the Agreement governing both Assignor's and Quasar's subscriptions when their subscriptions were auto-renewed – states that "[t]he Agreement becomes effective on the date specified in the Order Form (the 'Effective Date') and remains in force *until terminated in accordance with section 7*."  (Silverstein Decl. Ex. 2 § 1.2) (emphasis added).  In turn, Section 7.2 of the

Agreement states that, if a customer does not cancel its subscription more than thirty days prior to the end of the current term, the subscription will automatically renew.  (Silverstein Decl. Ex. 2 § 7.2.)  That provision reads:

> On the last day of the Initial Term and on each subsequent anniversary of that date, the Agreement will automatically be renewed at Trustpilot's then-current, standard non-discounted price for an additional period of same duration as the Initial Term in accordance with the terms referenced to in the applicable Order Form, unless one of the parties notifies the other party of its intent not to renew no less than thirty (30) days prior to the end of the then-current term.  Customer's notification of non-renewal must be made to: support@trustpilot.com.  Any such non-renewal shall be deemed to be a termination of the Agreement for the purposes hereof.

(*Id.*)[1]

The Agreement imposes no obligation on Trustpilot to send a reminder that a customer's subscription is renewing and the Amended Complaint pleads no such obligation.  In fact, Assignor's annual subscription auto-renewed in 2018 without incident as Plaintiffs do not plead Assignor was sent an "Auto-Enroll Email" in 2018, only in 2019.  (Am. Compl. ¶ 19.)  And Quasar manually renewed its subscription in 2019 and 2020, after its subscription was allegedly auto-renewed 2018 without its consent.  (Silverstein Decl. ¶¶ 13-14, Exs. 7-10.)

Although the automatic renewal policy was clearly disclosed in the Agreement, Plaintiffs allege that Assignor and Quasar, and the rest of the putative class, did not consent to auto-renewal of their subscriptions.  (Am. Compl. ¶ 15.)  Plaintiffs further allege that Trustpilot sent renewal-reminder e-mails to customers that were designed to go to the customers' junk e-mail

---

[1] All of the Agreements signed by Quasar – including the August 2015, April 2019, and January 2020 versions of the Agreement – contain provisions stating that subscriptions will automatically renew unless cancelled more than 30 days prior to the end of the current term. (Silverstein Decl. Ex. 5 §§ 1.2, 7.2; Silverstein Decl. Ex. 8 §§ 1.2, 7.2; Silverstein Decl. Ex. 10 §§ 1.2, 1.3.)

folder, so that the customers would be unaware that their subscriptions were being auto-renewed. (*Id.* ¶¶ 49-73.)

Plaintiffs' Amended Complaint asserts causes of action on behalf of the putative class for:  (1) breach of implied covenant of good faith and fair dealing; (2) breach of contract; (3) violation of New York General Business Law ("GBL") § 349 and New York General Obligations Law ("GOL") § 5-903; (4) violations of other state unfair business practices statutes, and (5) unjust enrichment.  (*Id.* ¶¶ 85-106.)  Plaintiffs allege that the class suffered monetary damages in an unspecified amount as a result of subscriptions that were automatically renewed, but which class members allegedly would not have renewed had they received the reminder email.  (*Id.* ¶ 75.)  Plaintiffs also allege that the class has been harmed by having their subscriptions auto-renewed at a rate higher than the rate to which the customer previously agreed.  (*Id.*)

## LEGAL STANDARD

Trustpilot moves to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for lack of subject matter jurisdiction as to Trustpilot Damages LLC under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678-81.  Dismissal is appropriate where the

7

plaintiff fails "to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Under Rule 12(b)(1), Plaintiffs bear the burden of establishing standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiffs must "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider "any statements or documents incorporated in [the complaint] by reference" and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991).  Here, Plaintiffs allege (among other things) breach of contract and the duty of good faith and fair dealing implied in their contracts.  (Am. Compl. ¶¶ 85-90.)  Thus, the Agreements and Order Forms are incorporated by reference in the Amended Complaint because they are relied upon in the Amended Complaint and form the basis for Plaintiffs' claims.  *See, e.g.*, *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (holding that contracts were incorporated by reference where they were "integral" to the complaint); *Long Island Lighting Co. v. Transam. Delaval Inc.,* 646 F. Supp. 1442, 1446 n.3 (S.D.N.Y. 1986) (holding that pertinent contract was incorporated into the complaint by reference).

The Court may also "take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation." *GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017).  Thus, the Court may take

judicial notice of Trustpilot Damages LLC's Certificate of Organization filed with the Iowa

Secretary of State. *See Staehr v. Mack*, No. 07-CV-10368, 2011 WL 1330856, at *6 n.5

(S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a

motion to dismiss") (citation omitted).

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE THE AGREEMENT IS UNAMBIGUOUS AND TRUSTPILOT ENGAGED IN NO DECEPTIVE ACT

Plaintiffs' claims are all premised upon the erroneous assertion that Trustpilot had a duty

to send customers reminder e-mails about auto-renewal and deceived its customers by failing to

comply with the Agreement's auto-renewal terms.  (Am. Compl. ¶ 4.)  Plaintiffs fail to allege

that Trustpilot had any contractual obligation to send reminder e-mails – because there is none.

As Judge Posner explained in interpreting a substantially similar automatic renewal

provision, when a contract does not require reminder emails, it does not assign "responsibility to

[the defendant] to track customers' renewal dates[.]"  *Cafferty, Clobes, Meriwether & Sprengel,*

*LLP v. XO Commc'ns Servs., LLC*, 850 F.3d 840, 843 (7th Cir. 2017).  Rather, if "every

customer is informed that the contract automatically renews at the end of the customer's term of

service unless that renewal is cancelled by the customer at least 30 days before the end of the

term" – as they were here – "it is child's play for the customer to keep track of the deadline

(30 days before the end of the term) for declining – without any penalty – to renew the contract."

*Id*. at 842-43.  As discussed below, this Court should reach the same result.

### A.   Plaintiffs Fail to State a Claim for Breach of Contract

Plaintiffs fail to plead a claim for a breach of contract because Plaintiffs cannot allege

that there is a duty imposed by the Agreement with which Trustpilot did not comply.  In order to

plead a breach of contract, Plaintiffs must allege:  "(1) the existence of a contract;

(2) performance by the party seeking recovery; (3) nonperformance by the other party; and

(4) damages attributable to the breach."  *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 402

(S.D.N.Y. 2012) (internal quotation marks and citation omitted).  "The nonperformance element

of a breach of contract claim requires that 'the complainant must plead the terms of the

agreement upon which defendant's liability rests.'"  *Id.* (quoting *Kaplan v. Aspen Knolls

Corp.,* 290 F. Supp. 2d 335, 337 (E.D.N.Y.2003)).

Plaintiffs do not – because they cannot – allege that the Agreement imposed a duty on

Trustpilot to send *any* renewal-reminder e-mails to customers, let alone from a particular e-mail

domain.  This indisputable fact alone is fatal to Plaintiffs' claim.  *See Cafferty*, 850 F.3d at 843;

*Chasman v. JP Morgan Chase Bank, NA*, No. 18 CIV. 6681 (NRB), 2020 WL 207784, at *3

(S.D.N.Y. Jan. 14, 2020) (holding that the plaintiffs "failed to plead their breach of contract

claim" where "plaintiffs do not identify any contractual provision that defendant allegedly

violated[.]").

Plaintiffs nonetheless allege that Trustpilot improperly imposed another year's

subscription:  (a) "despite the fact that the prior Subscriptions did not permit Trustpilot to

automatically renew for another year's Subscription" and (b) "at a rate greater than that of prior

Subscriptions."  (Am. Compl. ¶ 87(a)-(c).)  However, the Agreement expressly permits *both*

actions by Trustpilot.  Section 7.2 of the Agreement states:

> On the last day of the Initial Term and on each subsequent anniversary of that
> date, ***the Agreement will automatically be renewed at Trustpilot's then-current,
> standard non-discounted price*** for an additional period of same duration as the
> Initial Term in accordance with the terms referenced to in the applicable Order
> Form, unless one of the parties notifies the other party of its intent not to renew no
> less than thirty (30) days prior to the end of the then-current term.  Customer's
> notification of non-renewal must be made to: support@trustpilot.com.  Any such
> non-renewal shall be deemed to be a termination of the Agreement for the
> purposes hereof.

(Silverstein Decl. Ex. 2 § 7.2) (emphasis added).

Where a defendant complies with the terms of an auto-renewal provision, there is no breach of contract. In *Mazzola*, Judge Koeltl held that the "plaintiff does not and cannot allege that the defendants failed to comply with any of the billing terms disclosed in the Terms of Use" as "[t]he plaintiff does not allege that by continuing to bill the plaintiff $29.95 each month until the plaintiff either canceled her subscription or her credit card, [defendant] was doing anything other than complying with the automatic renewal term of its Terms of Use." *Mazzola*, 849 F. Supp. 2d at 402. Likewise, Plaintiffs fail to allege that Trustpilot breached the Agreement.[2]

Rather than impose a duty on Trustpilot, the Agreement specifically places the duty to monitor auto-renewal and cancel on Assignor and Quasar. "'[W]here the parties to a contract have agreed to a written termination clause, it must be enforced as written.'" *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.,* No. 13-CV-8997 (JPO), 2016 WL 236249, at *7 (S.D.N.Y. Jan. 20, 2016) (citing *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996)). The Agreement states that all a subscriber had to do to cancel the service was send an e-mail to support@trustpilot.com at least 30 days prior to the end of the contract term. (Silverstein Decl. Ex. 2 § 7.2.) The Order Forms electronically signed by Assignor on November 20, 2017 and by Quasar on March 23, 2017, also specifically state the "Next renewal date." (Silverstein Decl. Ex. 3 at 1, Ex. 6 at 1.)

---

[2] Judge Koeltl also found that that the plaintiff in *Mazzola* stated a separate claim for breach of the agreement because the defendant allegedly "prevented the plaintiff from canceling her membership and avoiding subsequent charges." *Mazzola*, 849 F. Supp. 2d at 403. By contrast, Plaintiffs do not allege that Trustpilot prevented Plaintiffs from canceling their subscriptions *before* they auto-renewed. Rather, Plaintiffs allege that Trustpilot "made it difficult if not impossible for Class members to cancel Subscriptions *following* auto-renewal" and that Quasar "complained that it *had been* auto-renewed without its awareness . . . ." (*Id.* ¶ 55) (emphasis added). Plaintiffs do *not* allege that Assignor or Quasar attempted to cancel their subscription 30 days before the end of the contractual term as required by the Agreement and were prevented from doing so.

As Judge Posner observed in *Cafferty,* "it is child's play for the customer to keep track of the deadline (30 days before the end of the term) for declining – without any penalty – to renew the contract."  850 F.3d at 842.  The district court in *Cafferty* likewise held:  "[plaintiff] has totally ignored the lack of diligence that it must ascribe <u>to itself</u> in order to lay the blame at [defendant's] doorstep for the manner in which the Agreement was renewed for no fewer than three additional three-year terms.  It is hard to explain why a business entering into a long-term contract with an automatic renewal provision would fail to set a reminder for itself." *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*, 190 F. Supp. 3d 765, 770 (N.D. Ill. 2016), *aff'd*, 850 F.3d 840 (7th Cir. 2017).

The same is true here.  Trustpilot complied with the Agreement's terms.  Trustpilot is not at fault for Assignor's and Quasar's failure to read the Agreement or exercise reasonable diligence in tracking their renewal dates.  Accordingly, Plaintiffs fail to state a claim for breach of contract.

### B.   Plaintiffs Fail to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiffs assert that Trustpilot breached the implied covenant of good faith and fair dealing by entering into subscriptions with business customers prior to the customers receiving renewal-reminder e-mails, and by using deceptive means to impose another year's subscription upon customers.  (Am. Compl. ¶¶ 86-87.)  This claim fails because it impermissibly seeks to rewrite the Agreement's unambiguous terms and is duplicative of Plaintiffs' breach of contract claim.

The implied duty of good faith and fair dealing cannot be used to rewrite the terms of a contract.  "[T]he implied covenant of good faith and fair dealing does not provide a court *carte blanche* to rewrite the parties' agreement . . . a court cannot imply a covenant inconsistent with

terms expressly set forth in the contract." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc*., 723 F. Supp. 976, 991 (S.D.N.Y. 1989).  "Nor can a court imply a covenant to supply additional terms for which the parties did not bargain." *Id*. (citing *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F. Supp. 1504, 1519 (S.D.N.Y.1989)).

Here, Section 7.2 of the Agreement governing Plaintiffs' subscriptions expressly permitted Trustpilot to renew automatically subscriptions "at the then-current, standard non-discounted rate for an additional period of the same duration as the Initial Term" of the subscription.  (Silverstein Decl. Ex. 2 § 7.2.)  Accordingly, Trustpilot could not breach the covenant of good faith and fair dealing by automatically renewing contracts that Trustpilot had a contractual right to renew by the Agreement's plain terms.

Nor was sending renewal-reminder e-mails from the @trustpilot.net domain a breach of the implied covenant of good faith and fair dealing as the Agreement did not obligate Trustpilot to send a reminder e-mail.  *Hartford Fire Ins. Co.*, 723 F. Supp. at 991 ("a court cannot imply a covenant inconsistent with terms expressly set forth in the contract"); *In re Residential Capital, LLC*, 531 B.R. 25, 52 (Bankr. S.D.N.Y. 2015) (dismissing good faith claim because plaintiff could not create an obligation under the implied covenant that defendant did not otherwise have under the express terms of the contract).

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should also be dismissed because it is duplicative of Plaintiffs' breach of contract claim.  "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Underdog Trucking, LLC, Reggie Anders. v. Verizon Services Corp.,*, No. 09-CV-8918, 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010) (internal quotations and citation omitted)

(dismissing claim for a breach of the implied covenant of good faith and fair dealing where the allegations for the two claims were based on the same facts).  "The conduct alleged in the two causes of action need not be identical in every respect" as long as they arise from the same operative facts.  *Mill Fin., LLC v. Gillett*, 992 N.Y.S.2d 20, 25 (2014).

Plaintiffs base their claims for breach of the implied covenant on the same factual allegations on which Plaintiffs' breach of contract claim is based.  Plaintiffs allege in both claims that Trustpilot entered into contracts with customers prior to the customers receiving renewal-reminder e-mails, and that Trustpilot used deceptive means to "impose another year's subscription" on class members.  (*Compare* Am. Compl. ¶¶ 86-87 *with* ¶¶ 89-90.)  Because the claim for breach of the implied duty of good faith and fair dealing is based on the "same alleged deceptive practices" as the breach of contract claim, the claim for breach of the implied covenant should be dismissed.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

### C.      Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' unjust enrichment claim is based on the allegation that Trustpilot was enriched by "imposing another year's Subscription via the Auto-Enroll emails."  (Am. Compl. ¶ 104.)  However, a cause of action for unjust enrichment will not lie where there is a valid written contract governing the dispute.  It is "well-settled in New York . . . that where there is a valid and enforceable written contract governing a particular subject matter, recovery in quasi-contract for acts relating to the same subject matter is precluded."  *SCM Grp., Inc. v. McKinsey & Co.*, No. 10 CIV. 2414 (PGG), 2011 WL 1197523, at *8 (S.D.N.Y. Mar. 28, 2011).

Here, Plaintiffs allege that they "[a]cquired [their] Trustpilot Subscription[s]" by entering into written contracts with Trustpilot.  (Am. Compl. ¶ 19(a); *see also id.* ¶ 86 ("Trustpilot entered into contracts in the form of annual Subscriptions").).  Plaintiffs' claim for unjust enrichment is thus impermissibly duplicative of Plaintiffs' breach of contract claim.  *Radiology & Imaging*

*Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., U.S.A., Inc.*, No. 20 CIV. 4117 (AKH), 2021 WL 149027, at *5 (S.D.N.Y. Jan. 15, 2021) ("Plaintiff's unjust enrichment claim, which seeks the same relief as its breach of contract claim, is dismissed as duplicative"); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 683 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim when the parties did not dispute the validity of the contracts).

In addition, and as discussed above, Plaintiffs agreed to the Agreement's terms, which specifically allow automatic renewal of the subscription.  (Silverstein Decl. Ex. 2 § 7.2, Ex. 3.) Plaintiffs' unjust enrichment claim thus fails because it "must rest on a *lack* of an express agreement between the parties.  The presence of an express contract is fatal to recovery on a quasi-contract theory."  *Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*, No. 7:11-CV-2563, 2011 WL 3628858, at *2 (S.D.N.Y. Aug. 16, 2011) (dismissing unjust enrichment claim because it "cannot be based on" "performing . . . pursuant to the Agreement.") (emphasis added); *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) (holding that the unjust enrichment claim is "not viable" against defendant "because the express terms of plaintiff's valid insurance contracts govern [defendants'] obligations to plaintiff").

Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.

**D.      Plaintiffs Fail to State a Claim Under New York GBL § 349 and GOL § 5-903**

Plaintiffs' statutory claims under the GBL and GOL fare no better than Plaintiffs' common law claims.  To state a claim for deceptive business practices under GBL § 349, Plaintiffs must also allege "that the challenged act or practice was a consumer-oriented act or practice that is misleading in a material way, and caused injury to the plaintiff."  *Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 60 (2d Dep't 2004).  To state a

claim for GOL § 5-903, Plaintiffs must allege facts sufficient to demonstrate that the contract at issue falls "within the scope" of the statute.  *Donald Rubin, Inc. v. Schwartz*, 559 N.Y.S.2d 307, 310 (1990).  Plaintiffs' claim fails under both statutes.

> 1. <u>Plaintiffs fail to state a claim under GBL § 349 because Plaintiffs fail to allege Trustpilot engaged in a deceptive business practice or consumer-oriented misconduct.</u>

Plaintiffs allege that Trustpilot engaged in a deceptive business practice by automatically renewing its customers' subscriptions.  (Am. Compl. ¶¶ 14-15, 100.)  But under GBL § 349, no deceptive business practice exists where, as here, the conduct complained of was "specifically provided for by the parties' [agreement] and thus was fully disclosed."  *Ludl*, 775 N.Y.S.2d at 60-61 ("The plaintiff alleged that the defendant engaged in a deceptive business practice by including an automatic renewal provision in the parties' lease for business equipment. . . . [B]ecause the conduct complained of is specifically provided for by the parties' lease and thus was fully disclosed, such conduct is not a deceptive business practice within the meaning of [GBL] § 349(a).").

As discussed above in Section II.A, the Agreement contains an automatic renewal provision that specifically allows for the automatic renewal of a customer's subscription at the "then-current" rate.  (Silverstein Decl. Ex. 2 § 7.2.)  Plaintiffs fail to plead any action taken by Trustpilot to renew customer's subscriptions that was not explicitly permitted by the Agreement's plain terms.  That defect alone is fatal to Plaintiffs' claim.

For example, in *Asimov v. Trident Media Grp., LLC*, 999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014), the court analyzed a similar auto-renewal provision.  The agreement provided that it "automatically shall be extended for successive additional periods of two (2) years each, unless the party wishing to terminate this Agreement gives written notice of termination to the other[.]"  *Id.* at *1.  The court held that "a GBL § 349 claim does not lie when the alleged deceptive

practice, as here, was a matter explicitly disclosed in and permitted under the parties' written

agreement." *Id*. at *4. Because Plaintiffs have not alleged that a deceptive business act

occurred, their GBL § 349 claims should be dismissed.

Plaintiffs also fail to plead that the conduct at issue – automatically renewing Plaintiffs'

subscription service – is "consumer-oriented" within the meaning of GBL § 349. Indeed,

"consumer-protection regimes, as set forth in the two New York statutes, do not apply to private

contract disputes relating to business-to-business transactions between sophisticated parties,

except in severely limited circumstances where the conduct at issue threatens to injure the public

at large[.]" *Radiology and Imaging Specialists of Lakeland, P.A.*, 2021 WL 149027, at *5; *see*

*also Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 107 (1st Dep't 2000) (holding that conduct

"does not fall within the parameters of [GBL § 349]" where the advertising service at issue was

"by definition, a commodity available to businesses only").

Here, the Amended Complaint specifically alleges that "Trustpilot sells subscriptions to

businesses. . . ." (Am. Compl. ¶ 3; *see also id.* ("Subscriptions provide its *business* customers"))

(emphasis added). Accordingly, the Agreement is a business-to-business contract, and the

automatic renewal of the subscription service is conduct aimed solely at the business that is

contractually bound.[3] Where "the acts complained of are limited to business rather than

consumer leases, and the conduct complained of did not carry over to consumer transactions" a

cause of action for deceptive business practices under GBL § 349 will not lie. *Ludl*, 775

---

[3] Plaintiffs also allege that the conduct at issue is consumer-oriented because automatically
renewing the subscriptions means Trustpilot reviews "continue[] to appear online directed at
consumers . . . to a greater extent than they would have been." (Am. Compl. ¶ 95.) But
renewing the business' subscriptions such that the reviews remain online is still business, not
consumer, conduct. *Reit v. Yelp!, Inc.*, 907 N.Y.S.2d 411, 415 (Sup. Ct. N.Y. Co. 2010) ("Reit's
allegation that Yelp deletes postings for the purpose of selling advertising, if true, is business
conduct, not consumer oriented conduct.").

N.Y.S.2d at 397-98 (holding that the automatic renewal of contract between businesses was "limited to business"); *see also Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 450 (S.D.N.Y. 2004) (dismissing GBL § 349 claim because the plaintiff was a "business, not an individual who purchased goods and services for personal, family, or household use.").  Plaintiffs' GBL § 349 claim should likewise be dismissed because the Agreement is a business-to-business contract.

2.      <u>Plaintiffs fail to state a claim under GOL § 5-903 because the subscription service does not pertain to real or personal property.</u>

Plaintiffs allege that Trustpilot's automatic renewal of the subscription service violates GOL § 5-903.  (Am. Compl. ¶¶ 93, 97.)  However, GOL § 5-903(2) states that the statute is applicable to contracts "for service, maintenance or repair to or for any *real or personal property*. . . ." (emphasis added.)  Where, as here, "the services rendered are 'merely of a consulting, analytical or administrative nature' GOL § 5-903(2) is inapplicable." *Asimov*, 999 N.Y.S.2d at *3 (internal quotation marks and citation omitted).

Plaintiffs admit that Trustpilot's subscription service is of a consulting, analytical, or administrative nature, and does not pertain to real or personal property.  According to the Amended Complaint, Trustpilot's "annual Subscriptions provide its business customers access to consumer data" and other benefits including "consumer insight data generated by the Website's activity[.]"  (Am. Compl. ¶ 2.)  The Agreement also lists Trustpilot's services to include, *inter alia*, (1) "a seller review invitation service," which sends an invitation to the businesses' customers to post reviews of their experiences and (2) access to Trustpilot's "product review invitation service," which allows the customer's customers to receive e-mail notifications to enter a review upon the businesses' activation of the subscription service.  (Silverstein Decl. Ex. 2 §§ 2.1.2, 2.1.3.)

18

None of the services alleged in the Amended Complaint or contained in the Agreement pertains to real or personal property.  Accordingly, Plaintiffs cannot state a claim under GOL § 5-903.  *See, e.g.*, *Donald Rubin, Inc. v. Schwartz*, 559 N.Y.S.2d 307, 310 (1990) (holding that a contract containing an automatic renewal provision for a trustee to administer services was not "real or personal property" for purposes of GOL § 5-903).

### E.    Plaintiffs Cannot State a Claim for Violations of Other States' Unfair Business Practices Statutes

Finally, Plaintiffs allege violations of sixteen other states' and the District of Columbia's consumer protection statutes.  (Compl. ¶ 101 (a)-(q).)  However, where a contract contains a choice of law provision with broad language "indicating that any controversy 'arising out of or relating to' the agreement would be governed by the laws of New York," the parties "are bound by New York law with regard to non-contractual causes of action[.]"  *Rice v. Scudder Kemper Invs., Inc.*, No. 01 CIV. 7078 (RLC), 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d Cir. 2006).

The Agreement contains such a choice of law clause.  Section 16.1 of the Agreement states, "The Agreement, and any disputes directly or indirectly arising from or related to the Agreement, shall be governed exclusively by the laws of the State of New York, without regard to the conflict of law provisions thereof (Except Section 5-1401 of the New York General Obligations Laws)."[4]  (Silverstein Decl. Ex. 2 § 16.1.)

---

[4] The New York Court of Appeals has held that New York courts should not engage in conflicts of laws analysis where parties' contract includes a New York choice-of-law provision even if the contract does not fall within General Obligations Law § 5-1401.  *Ministers & Missionaries Ben. Bd.* v. *Snow*, 26 N.Y.3d 466, 474, (2015) ("[W]hen parties include a choice-of-law provision in a contract, they intend that the law of the chosen state – and no other state – will be applied."), *reargument denied*, 26 N.Y.3d 1136 (2016); *see also 2138747 Ontario, Inc. v. Samsung C & T Corp.*, 144 A.D.3d 122, 128 (1st Dep't 2016) (same).

Judge Hellerstein's recent decision in *Radiology and Imaging Specialists of Lakeland, P.A* is instructive.  Judge Hellerstein dismissed plaintiff's claim for violation of the Florida Deceptive and Unfair Trade Practices Act because the agreement "contain[ed] a broad choice-of-law provision selecting New York law as the governing law for 'any claims arising under or relating in any way' to the agreement."  *Radiology and Imaging Specialists of Lakeland*, 2021 WL 149027, at *5; *see also Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D.N.Y. 2016) ("The Court finds that the New York choice-of-law provision contained in the [] Agreements prevents plaintiff's assertion of North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims[.]").  Accordingly, the Court should dismiss Plaintiffs' claim for violations of other states' and the District of Columbia's consumer protection statutes for this reason alone.

Even if the Agreement lacked a New York choice of law clause, Plaintiffs' claim would still fail.  Although the specifics of each state statute vary, "[t]he modern consumer protection statutes in effect in all the states prohibit deceptive acts or practices in one form or another."  § 128 STATE INTERPRETATIONS, CONSUMER LAW SALES PRACTICES AND CREDIT REGULATION.[5]

For example, Quasar is a Florida corporation based in Miami.  (Am. Compl. ¶ 20.) Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "unfair methods of

---

[5] Ariz. Rev. Stat. Ann. § 44-1522(a) ("deceptive or unfair act"); Cal. Bus. & Prof. Code § 17200 ("unfair" and "deceptive"); Conn. Gen. Stat. § 42-110b ("unfair or deceptive acts"); D.C. Code § 28-3904 ("unfair or deceptive"); Fla. Stat. § 501.202 ("deceptive and unfair trade practices"); Haw. Rev. Stat § 481A-3 ("deceptive trade practice"); 815 Ill. Comp. Stat. 505/2 ("unfair or deceptive acts"); Minn. Stat. § 325F. 69 ("deceptive practice"); N.J. Stat. Ann. § 56:8-2 ("deception" or "unlawful conduct"); N.M. Stat. Ann. § 57-12-3 ("unfair or deceptive trade practices); N.C. Gen. Stat. § 75-1.1 ("unfair or deceptive acts"); N.D. Cent. Code. § 51-15-02 ("deceptive act or practice"); Or. Rev. Stat. § 646.605 ("unlawful trade practice"); Utah Code Ann. § 13-11-4 ("deceptive act or practice"); Vt. Stat. Ann. Tit. 9 § 2453 ("unfair or deceptive acts"); Wash. Rev. Code § 19.86.020 ("unfair or deceptive acts"); Wis. Stat. § 100.18 ("deceptive").

competition, or unconscionable, deceptive, or unfair acts or practices."  Fla. Stat. § 501.202.  A

plaintiff cannot transform a breach of contract claim into a claim of unfair or deceptive conduct

under the FDUTPA absent "significant allegations of unfair or deceptive conduct."  *Willard v.*

*Home Depot, U.S.A., Inc.,* No. 5:09-cv-110/RS-MD, 2009 WL 1884395, at *2 (N.D. Fla.

June 29, 2009) (citation omitted).  No such allegations are present here, as the Agreement clearly

discloses the automatic renewal policy and explains how to unsubscribe.  "'Courts routinely

dismiss FDUTPA claims where those claims are directly and fully rebutted by express evidence

in a governing written contract.'"  *Solution Z v. Alma Lasers, Inc.,* No. 11-CV-21396, 2013

WL 12246356, at *7 (S.D. Fla. Jan. 22, 2013) (citation omitted); *see also Zlotnick v. Premier*

*Sales Grp., Inc.,* 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) ("Plaintiff has failed to state a

cause of action under FDUTPA because it is undisputed that [defendant] complied with the terms

of the . . .  Agreement."), *aff'd,* 480 F.3d 1281 (11th Cir. 2007).

    As discussed above, because the Agreement spells out how to unsubscribe, there is no

deceptive act, unfair practice, unlawful conduct, or violation of public policy – under Florida

law, or any of the other substantially similar state laws on which Plaintiffs rely.  *See, e.g.*, *Tar*

*Heel Indus., Inc. v. E.I. duPont de Nemours & Co.*, 91 N.C. App. 51, 57 (1988) (not unfair or

deceptive to exercise the contract's termination clause); *Michael Todd, et al., v. Xoom Energy*

*Maryland, LLC, et al.*, No. 8:15-CV-154, 2015 WL 10714486, at *44 (D. Md. Apr. 25, 2015)

("Generally speaking, when a party acts within its contractual rights, it does not violate the

NCUDTPA"); *Avery v. State Farm Mut. Auto. Ins. Co.*, 296 Ill. Dec. 448, 491 (2005) ("A breach

of contractual promise, without more, is not actionable under the Consumer Fraud Act.").

Accordingly, the claim fails for this additional reason.

## II.   PLAINTIFF TRUSTPILOT DAMAGES LLC LACKS STANDING BECAUSE THE PURPORTED ASSIGNMENT IS VOID AS CHAMPERTOUS

Should any of Plaintiffs' claims survive – which they should not – then Trustpilot Damages LLC should be dismissed as a Plaintiff.  Assignor's assignment of the Agreement to Trustpilot Damages LLC is void as a matter of law because it was made in violation of New York's champerty statute.

New York Judiciary Law § 489 states:  "No . . . corporation or association, directly or indirectly, . . . shall solicit, buy[,] or take an assignment of, or be in any manner interested in buying or taking an assignment of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."  This prohibition was intended "to prevent or curtail the commercialization of or trading in litigation."  *Justinian Capital SPC v. WestLB AG,* 28 N.Y.3d 160, 163 (2016).

The New York Court of Appeals has held that an assignment is champertous when the "intent to sue on that claim" was the "primary purpose for, if not the sole motivation behind, entering into the transaction."  *Bluebird Partners, L.P. v. First Fid. Bank, N.A.,* 94 N.Y.2d 726, 735-36 (2000).  Assignments made in violation of the champerty statute are void, "effectively den[ying] the Plaintiff standing."[6]  *Gowen v. Helly Nahmad Gallery, Inc.,* 77 N.Y.S.3d 605, 631 (Sup. Ct. N.Y. Co. 2018), *aff'd*, 95 N.Y.S.3d 62 (2019).

---

[6] There is a divergence in authority regarding whether an assignment that is voided as champertous deprives the plaintiff of standing to bring the claim or renders the claim itself meritless.  *Compare Phoenix Light SF Ltd. v. U.S. Bank N.A.*, No. 14-CV-10116, 2020 WL 1285783, at *16 (S.D.N.Y. Mar. 18, 2020) (voiding an assignment as champertous and finding that the plaintiffs therefore lacked prudential and Article III standing); *S'holder Representative Servs. LLC v. Scribble Techs. Inc.,* No. 17-CV-2056 (PKC), 2018 WL 2356659, at *3 (S.D.N.Y. Mar. 30, 2018) (considering defendant's argument that plaintiff lacks standing because the purported assignment violates New York champerty laws as a challenge to Article III standing) *with House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*, No. 13-CV-519, 2015 WL 5190432, at *7 (S.D.N.Y. Sept. 4, 2015) (holding that CDO issuer's assignment of claims to an indenture trustee did not raise an Article III issue, only a "real

Here, Trustpilot Damages LLC's name alone demonstrates that the assignment was champertous.  Indeed, Plaintiffs admit that "Trustpilot Damages LLC was formed to obtain justice for Trustpilot subscribers affected by the violations described herein."  (Am. Compl. ¶ 17.)  Trustpilot Damages LLC was incorporated in Iowa on August 21, 2020 – just six months before the initial Complaint was filed.  (Silverstein Decl. ¶ 3, Ex. 1.)  Trustpilot Damages LLC's principal place of business is listed with the Iowa Secretary of State as 305 Broadway, Suite 700, New York NY 10007, which is also the business address of Frank LLP, Plaintiffs' counsel.[7] (*Id.*)  These facts establish that the sole purpose for the assignment was for assignee Trustpilot Damages LLC to bring this lawsuit.

Nothing in the Amended Complaint suggests that Trustpilot Damages LLC took the assignment for any other reason.  *See Justinian Capital SPC*, 28 N.Y.3d at 163 (holding that champerty statute was violated because assignee commenced an action within days of being assigned certain notes, and there was no suggestion that the assignee had acquired the notes "for any purpose other than the lawsuit it commenced almost immediately.").  Indeed, it is unclear what rights, interest, or obligations Trustpilot Damages LLC could have been assigned aside from the right to pursue this suit, as Assignor no longer has an active subscription with Trustpilot.  *See BSC Assocs., LLC v. Leidos, Inc.*, No. 3:14-cv-00645, 2015 WL 667853, at *9 (N.D.N.Y. Feb. 17, 2015) (granting defendant's motion to dismiss under § 489 in part on the

---

party in interest" standing issue).  Accordingly, if the Court does not dismiss Trustpilot Damages LLC as a Plaintiff under Rule 12(b)(1), Trustpilot Damages LLC's claims should be dismissed under Rule 12(b)(6).

[7] Indeed, the connection between Trustpilot Damages LLC's counsel and the Assignor is believed to predate the assignment.  Trustpilot Damages LLC counsel has actually been a client of the Assignor and promoted its business on the Internet.  Accordingly, there is no way that Trustpilot Damages LLC and its counsel could meet the suitability and related requirements to certify a class in this matter, but that issue should never have to be reached.

ground that plaintiff received "this cause of action from [a related nonparty] absent any related obligations or assets.").

Because the assignment was effectively "nothing but a hunting license" that allowed Trustpilot Damages LLC to bring these claims, "it is champertous and therefore void." *Refac Int'l, Ltd. v. Lotus Dev. Corp.,* 131 F.R.D. 56, 58 (S.D.N.Y. 1990) (holding that, under Section 489, an agreement was champertous where the assignee was granted a 5% interest in a computer software patent exclusively for the purpose of litigating a claim on behalf of the assignor as a "surrogate plaintiff"); *Am. Rest. China Mfrs. Ass'n, Inc. v. Corning Glass Works*, 198 N.Y.S.2d 366, 370-71 (Sup. Ct. Erie Co. 1960) (dismissing complaint where plaintiff accepted an assignment of a cause of action for the purpose of commencing suit on such assigned cause).

Because the assignment of claims to Trustpilot Damages LLC is barred under New York Judiciary Law § 489, Trustpilot Damages LLC cannot pursue these claims.

## III.     THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Amended Complaint suffers from the same deficiencies that plagued the original Complaint, which cannot be remedied given the Agreement's unambiguous terms. *See, e.g.*, *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394 (PMH), 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (finding that the facts alleged would render an amendment to the unjust enrichment claim futile because there was "a valid and enforceable contract."); *In re CCT Commc'ns, Inc.*, No. 07-10210 (SMB), 2008 WL 2705471, at *14 (Bankr. S.D.N.Y. July 2, 2008) (finding the same because a cause of action for a breach of implied covenant of good faith and fair dealing cannot be used to "rewrite" the unambiguous terms of the contract); *Rephen v. Gen. Motors Corp.*, No. 15-CV-5206 (NSR), 2016 WL 4051869, at *5 (S.D.N.Y. July 26, 2016) (holding that amendment of GBL § 349 would be futile because correspondence regarding

service subscription would not mislead a reasonable customer); *Rothbaum v. Bank of Am., N.A.*, No. 16-CV-02387 (ALC), 2017 WL 253068, at *5 (S.D.N.Y. Jan. 19, 2017) (holding that amendment would be futile "based on the unambiguous terms of the document underlying his breach of contract claim."). Given Plaintiffs' inability to state a claim even with the benefit of having reviewed Trustpilot's first motion to dismiss before re-pleading, further amendment would clearly be futile. *Nasik Breeding & Research Farm Ltd. v. Merck & Co.,* 165 F. Supp. 2d 514, 544-45 (S.D.N.Y. 2001) (dismissing with prejudice where the plaintiff had "already amended her complaint once in response to a motion to dismiss that was substantially similar to [the] instant motion . . . which suggest[ed] that granting a further opportunity to amend would be futile."). Accordingly, the Court should dismiss the Amended Complaint with prejudice.[8]

## CONCLUSION

The Agreement and the law are clear. Trustpilot had no duty to send an auto-renewal reminder e-mail. If Quasar and Trustpilot Damages LLC's Assignor wanted to unsubscribe, all they had to do was read the Agreement and follow the clear instructions for unsubscribing. Neither did so. This Court should dismiss the Amended Complaint with prejudice and award Trustpilot such other and further relief as the Court deems just and proper.

---

[8] Even if Plaintiffs' allegations were to survive – which they should not – Plaintiffs' claims cannot be resolved on a class-wide basis. Individual inquiries would be necessary to determine which proposed class members wanted their subscriptions to be automatically renewed and/or continued to use or affirmatively renewed their subscription after automatic renewal. *See, e.g.*, *Vaccariello v. XM Satellite Radio, Inc*., 295 F.R.D. 62, 75-76 (S.D.N.Y. 2013) (denying class certification to subscriber to satellite radio filed putative class action against provider alleging that its practice of automatically renewing customers' subscriptions was deceptive). For example, Quasar renewed its subscription twice after its subscription was auto-renewed in 2018. (Silverstein Decl. ¶¶ 13-14, Exs. 7-10.) The Court, however, should never have to reach this issue as the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York         M<span>C</span>D<span>ERMOTT</span> W<span>ILL</span> & E<span>MERY</span> LLP
       April 14, 2021

                                          */s/ Andrew B. Kratenstein*
                                        Andrew B. Kratenstein
                                        Caroline A. Incledon
                                        Kierstin S. Fowler
                                        340 Madison Avenue
                                        New York, New York 10173-1922
                                        (212) 547-5400

                                        William P. Donovan, Jr. (admitted *pro hac vice*)
                                        2049 Century Park East
                                        Suite 3200
                                        Los Angeles, California
                                        (310) 788-4121

                                        *Attorneys for Defendant Trustpilot, Inc.*