UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTPILOT DAMAGES LLC, and TUMBACO INC. d/b/a QUASAR EXPEDITIONS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>TRUSTPILOT INC.,<br><br>*Defendant*. | Civil Action No. 1:21-cv-00432-JSR |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT TRUSTPILOT, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

**MCDERMOTT WILL & EMERY LLP**

Andrew B. Kratenstein
Caroline A. Incledon
Kierstin S. Fowler
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

William P. Donovan, Jr. (admitted *pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, California 90067
(310) 788-4121

*Attorneys for Defendant Trustpilot, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.      THE AGREEMENT IS INTEGRAL TO THE COMPLAINT ...............................1

    II.     THERE WAS NO BREACH OF CONTRACT ......................................................2

    III.    THERE WAS NO BAD FAITH ...............................................................................3

    IV.    THERE WAS NO UNJUST ENRICHMENT .........................................................4

    V.     THERE WAS NO DECEPTION OR CONSUMER ORIENTATION ....................................................................................................................4

    VI.    THE AGREEMENT IS OUTSIDE THE SCOPE OF GOL § 5-903 .......................6

    VII.   THE AGREEMENT'S CHOICE OF LAW CLAUSE SHOULD BE ENFORCED ............................................................................................................8

    VIII.  THE ASSIGNMENT TO TRUSTPILOT DAMAGES LLC WAS CHAMPERTOUS ....................................................................................................9

CONCLUSION ................................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Optical Co. v. Curtiss*,
   56 F.R.D. 26 (S.D.N.Y. 1971) ...................................................................................................10

*Ambush Alarm & Elecs., Inc. v. 606 Second Ave. Rest. Corp.*,
   59 Misc.3d 133(A) (2d Dep't 2018) ............................................................................................8

*Angelo v. Fid. & Guar. Life Ins. Co.*,
   No. 18-cv-3224, 2019 U.S. Dist. LEXIS 12251 (D.N.J. Jan. 25, 2019) .....................................2

*Arnold v. Hearst Mag. Media, Inc.*,
   No. 19-CV-1969-WQH-MDD, 2021 WL 488343 (S.D. Cal. Feb. 10, 2021) ............................4

*Asimov v. Trident Media Group, LLC*,
   999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014) .....................................................................4, 5, 6

*Carbo Indus., Inc. v. Coastal Ref. & Mktg., Inc.*,
   154 F. App'x 218 (2d Cir. 2005) .................................................................................................7

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................................1

*Com. Data Servers, Inc. v. Int'l Bus. Mach. Corp.*,
   262 F. Supp. 2d 50 (S.D.N.Y. 2003) ...........................................................................................2

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
   307 F. Supp. 2d 553 (S.D.N.Y. 2004) .........................................................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ..........................................................................................................1

*Dean v. United of Omaha Life Ins.*,
   No. CV 05-6067-GHK, 2007 WL 7079558 (C.D. Cal. Aug. 27, 2007) .....................................3

*Env't Servs., Inc. v. Recycle Green Servs., Inc.*,
   7 F. Supp. 3d 260 (E.D.N.Y. 2014) ............................................................................................7

*Expo Sure USA v. Pita Lovers*,
   62 Misc. 3d 1208(A) (Dist. Ct. Nassau Co. 2019) .....................................................................7

*Finucane v. Interior Constr. Corp.*,
   264 A.D.2d 618 (1999) ...............................................................................................................9

*Frank H. Zindle, Inc. v. Friedman's Express, Inc.*,
   17 N.Y.S.2d 594 (1st Dep't 1940) .................................................................................. 10

*Haraden Motorcar Corp. v. Bonarrigo*,
   No. 19-cv-01079, 2020 WL 1915125 (N.D.N.Y. Apr. 20, 2020) ............................................. 4

*Healthcare I.Q., LLC v. Tsai Chung Chao*,
   118 A.D.3d 98 (1st Dep't 2014) ........................................................................................ 7

*King v. Bumble Trading, Inc.*,
   393 F. Supp. 3d 856 (N.D. Cal. 2019) .......................................................................... 5, 9

*Labajo v. Best Buy Stores, L.P.*,
   478 F. Supp. 2d 523 (S.D.N.Y. 2007) ............................................................................... 3

*Long v. Marubeni Am. Corp.*,
   05-cv-0639, 2006 WL 1716878 (S.D.N.Y. June 20, 2006) ............................................... 3

*Ludl Electronics Products, Ltd. v. Wells Fargo Financial Leasing, Inc.*,
   6 A.D.3d 397 (2d Dep't 2004) ......................................................................................... 5

*Lussoro v. Ocean Fin. Fed. Credit Union*,
   456 F. Supp. 3d 474 (E.D.N.Y. 2020) ............................................................................... 3

*Marc J. Elkowitz, M.D., P.C. v. UnitedHealthcare of N.Y., Inc.*,
   No. 17-CV-4663, 2021 U.S. Dist. LEXIS 66114 (E.D.N.Y. Mar. 31, 2021) ........................... 2

*Mazzola v. Roomster Corp.*,
   849 F. Supp. 2d 395 (S.D.N.Y. 2012) ............................................................................... 3

*Medicrea USA, Inc. v. K2M Spine, Inc.*,
   No. 17 CIV. 8677 (AT), 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018) ................................... 9

*Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network*,
   19 A.D.3d 1145 (4th Dep't 2005) ...................................................................................... 7

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017) ............................................................................................. 3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ........................................................................................................ 5

*Ovitz v. Bloomberg L.P.*,
   18 N.Y.3d 753 (2012) .................................................................................................. 5, 8

*Ovitz v. Bloomberg L.P.*,
   909 N.Y.S.2d 710 (1st Dep't 2010) .................................................................................. 8

*Ovitz v. Bloomberg, L.P.*,
   No. 603692/08, 2009 N.Y. Misc. LEXIS 6239 (Sup. Ct. N.Y. Co. Oct. 7,
   2009) ..................................................................................................................5, 8

*SCM Grp., Inc. v. McKinsey & Co.*,
   No. 10 CIV. 2414 (PGG), 2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011)................................4

*Tr. For the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love
   Funding Corp.*,
   13 N.Y.3d 190 (2009) ..........................................................................................10

*Trepp, LLC v. McCord Dev., Inc.*,
   953 N.Y.S.2d 600 (1st Dep't 2012) ..........................................................................6

*Universal Inv. Advisory SA v. Bakrie Telecom Pte., Ltd.*,
   154 A.D.3d 171 (1st Dep't 2017) ............................................................................10

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
   338 F. Supp. 2d 422 (E.D.N.Y. 2004) ........................................................................6

*Warner v. Tinder, Inc.*,
   No. 15-23790-CIV, 2018 WL 1894726 (S.D. Fla. Jan. 18, 2018).............................................5

*Wilson v. Kellogg Co.*,
   111 F. Supp. 3d 306 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir. 2016).......................1, 2

*Matter of Wimbledon Fund, SPC (Class TT) v. Weston Capital Partners Master
   Fund II, Ltd.*,
   184 A.D.3d 448 (1st Dep't 2020) ............................................................................10

*Wolo Mfg. Corp. v. ABC Corp.*,
   349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........................................................................6

*Young v. Wells Fargo & Co.*,
   671 F. Supp. 2d 1006 (S.D. Iowa 2009) ......................................................................9

**Statutes**

N.Y. Gen. Oblig. Law § 5-903................................................................................ 6-8

N.Y. Gen. Business Law § 349................................................................................ 4-6

## PRELIMINARY STATEMENT

This flawed action was filed by a Plaintiff who took an assignment of claims in violation of New York's anti-champerty statute. Desperate to save the case, a new Plaintiff was added. In their opposition ("Opp'n") Plaintiffs now ask the Court to ignore the most pertinent information – the parties' contracts. For the reasons set forth in Trustpilot's[1] opening brief and below, the amendment changes nothing. Trustpilot's motion should be granted and the case dismissed.

## ARGUMENT

**I.    THE AGREEMENT IS INTEGRAL TO THE COMPLAINT**

Plaintiffs implore the Court to ignore the Agreement. (Opp'n at 4, 21-22.) However, documents that are "integral" to the complaint are properly considered on a motion to dismiss. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002). A document is "integral" if the complaint "relies heavily upon its terms and effect". *Id.* Plaintiffs clearly relied on the "terms and effect" of their contracts with Trustpilot in bringing suit. (Am. Compl. ¶ 17 (referencing the parties' "contractual agreements"); ¶¶ 19-21 (stating that Plaintiffs "[a]cquired [] Trustpilot Subscription[s]"); ¶¶ 88-90 (pleading breach of contract); Opp'n at 11 ("Trustpilot signed services agreements with Plaintiffs . . . .").)

Plaintiffs argue that the Amended Complaint does not "reference" or "invoke[] specific contract terms". (Opp'n at 21.) That is irrelevant. "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *see also Wilson v. Kellogg Co.,* 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015) ("Plaintiff['s]

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as in Trustpilot's opening brief (ECF No. 26) ("TP Mem.").

failure to include matters of which . . . [he] had notice and which were integral to [his] claim – and that [he] apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion."), *aff'd*, 628 F. App'x 59 (2d Cir. 2016).[2]

Seeking to delay the inevitable, Plaintiffs contend that the Agreement is "unauthenticated." (Opp'n at 21.) But Plaintiffs have not claimed that the exhibits are "*not authentic,* just that they are *not authenticated.*" *Com. Data Servers, Inc. v. Int'l Bus. Mach. Corp.*, 262 F. Supp. 2d 50, 59 (S.D.N.Y. 2003). Plaintiffs are "clearly in the position to know if the exhibits are not authentic" but do not claim inauthenticity. *Id*. In any event, the declaration by Trustpilot's in-house counsel sufficiently authenticates the Agreement. *Wilson,* 111 F. Supp. 3d at 312 (E.D.N.Y. 2015) (holding that in-house counsel properly authenticated contracts); *Com. Data Servers,* 262 F. Supp. 2d at 58 (declaration by counsel stating that "documents are true and correct copies" was sufficient). The Agreement must be considered.

## II.   THERE WAS NO BREACH OF CONTRACT

Plaintiffs contend that the Agreement "did not permit Trustpilot to charge Plaintiffs money in order to auto-renew Subscriptions beyond the initial contract's twelve-month period" or increase charges after auto-renewal. (Opp'n at 10.) Both statements are demonstrably false.

First, Plaintiffs do not allege that Trustpilot charged Plaintiffs money "in order to auto-renew"; they allege that Plaintiffs auto-renewed because they did not receive an auto-renewal

---

[2] Plaintiffs's cases are inapposite. In one, the contract was not received by plaintiffs. *Angelo v. Fid. & Guar. Life Ins. Co.*, No. 18-cv-3224, 2019 U.S. Dist. LEXIS 12251, at *3 (D.N.J. Jan. 25, 2019). In another, defendants submitted over 10,000 pages of exhibits and there was a dispute as to whether plaintiffs received the documents. *Marc J. Elkowitz, M.D., P.C. v. UnitedHealthcare of N.Y., Inc.*, No. 17-CV-4663, 2021 U.S. Dist. LEXIS 66114, at *8 (E.D.N.Y. Mar. 31, 2021). Here, Plaintiffs plead that they had subscription agreements with Trustpilot. (Am. Compl. ¶¶ 19-21, 88-90; Opp'n at 11.) Trustpilot's counsel also sent Plaintiffs' counsel the Assignor's un-redacted Order Form filed with Trustpilot's motion to avoid any doubt that it was the relevant Order Form. (Kratenstein Decl. ¶ 5, Ex. A.)

reminder e-mail.  (Am. Compl. ¶¶ 49-56.)  Second, the Agreement states that, if the subscription is not cancelled "no less than thirty (30) days prior to the end of the then-current term" then the subscription "will automatically be renewed at Trustpilot's then-current, standard non-discounted price. . . ."  (Silverstein Decl. Ex. 2 § 7.2.)  There is no ambiguity.

By contrast, Plaintiffs' cases involved ambiguous or misconstrued contracts.  *See Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 483 (E.D.N.Y. 2020) ("[T]he Court finds that the Contract is ambiguous as to whether Defendant is allowed to impose overdraft fees on APPSN transactions."); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 118 (2d Cir. 2017) (finding that insurer did not correctly interpret its own policy); *Dean v. United of Omaha Life Ins.*, No. CV 05-6067-GHK (FMOx), 2007 WL 7079558, *3-4 (C.D. Cal. Aug. 27, 2007) (finding term "cost of insurance charge" ambiguous); *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 530 (S.D.N.Y. 2007) (finding several ambiguities, including whether it was "disclosed to [plaintiff] that she would be charged.").

Plaintiffs also contend that *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395 (S.D.N.Y. 2012), supports their claim because of the "defendant's refusal to permit [plaintiff] to cancel."  (Opp'n at 12.)  In *Mazzola*, the customer was prevented from canceling *before* the auto-renewal date.  849 F. Supp. 2d at 403 ("The plaintiff alleges that she followed the instructions on how to cancel her membership, but that the defendants prevented her from doing so.").  By contrast, Plaintiffs do not allege that any Trustpilot customer who timely cancelled was renewed.

## III.   THERE WAS NO BAD FAITH

Plaintiffs argue that their bad faith claim is "distinctly pleaded" from their breach of contract claim.  (Opp'n at 14-15.)  But both claims are predicated on the patently false allegation that the Agreement precludes auto-renewal.  (Am. Compl. ¶¶ 87, 90.)  Thus, the good faith claim fails.  *See, e.g.*, *Long v. Marubeni Am. Corp.*, 05-cv-0639, 2006 WL 1716878, at *1 (S.D.N.Y.

3

June 20, 2006) ("[T]o the extent this alleged unlawful conduct constituted a breach of an implied contract term, plaintiffs' allegations [were] subsumed under the breach-of-contract claim and may not constitute an entirely separate, and duplicative, cause of action"); *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ([T]he predicate conduct for the claims [was] the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim.").

## IV. THERE WAS NO UNJUST ENRICHMENT

Plaintiffs contend that their claim for unjust enrichment is properly plead because "the dispute might not necessarily be resolved by focusing on contract law." (Opp'n at 23.) As discussed above, this case is resolved by contract law. Moreover, neither case cited by Plaintiffs involved an alleged breach of contract. *See Haraden Motorcar Corp. v. Bonarrigo*, No. 19 –cv-01079, 2020 WL 1915125, at *10 (N.D.N.Y. Apr. 20, 2020); *Arnold v. Hearst Mag. Media, Inc.*, No. 19-CV-1969-WQH-MDD, 2021 WL 488343, at *8 (S.D. Cal. Feb. 10, 2021). Thus, Plaintiffs fail to overcome the basic principle that "where there is a valid and enforceable written contract governing a particular subject matter, recovery in quasi-contract for acts relating to the same subject matter is precluded." *SCM Grp., Inc. v. McKinsey & Co.*, No. 10 CIV. 2414 (PGG), 2011 WL 1197523, at *8 (S.D.N.Y. Mar. 28, 2011).

## V. THERE WAS NO DECEPTION OR CONSUMER ORIENTATION

Plaintiffs contend that Trustpilot relies on "loopholes" and a "technicality" to support dismissal of the GBL § 349 claim. (Opp'n at 18.) The Agreement is neither a loophole nor a technicality. Unlike in a case they cite, Plaintiffs run from their contracts. *See Arnold*, 2021 WL 488343, at *7 ("Plaintiffs attach copies of Defendants' paper forms, emails, and webpages in their possession to the Complaint" to demonstrate inadequate auto-renewal disclosures).

4

Plaintiffs' attempt to distinguish Trustpilot's cases is equally puzzling.  Plaintiffs assert that the auto-renewal provisions in *Asimov v. Trident Media Group, LLC*, 999 N.Y.S.2d 796 (Sup. Ct. N.Y. Co. 2014), and *Ludl Electronics Products, Ltd. v. Wells Fargo Financial Leasing, Inc.*, 6 A.D.3d 397 (2d Dep't 2004), were enforced because they were "negotiated".  (Opp'n at 17.)  But any "negotiation" was immaterial to the courts' conclusion that "a GBL § 349 claim does not lie when the alleged deceptive practice, as here, was a matter explicitly disclosed in and permitted under the parties' written agreement."  *Asimov*, 999 N.Y.S.2d at *4; *see also Ludl*, 6 A.D.3d at 398 ("[B]ecause the conduct complained of is specifically provided for by the parties' lease and thus was fully disclosed, such conduct is not a deceptive business practice within the meaning of [GBL] § 349(a).").  Rather, it is Plaintiffs' cases that are easily distinguished.[3]

Plaintiffs also contend that GBL § 349 applies because "the purpose of the interactions between Plaintiffs and Trustpilot was to influence consumer activity."  (Opp'n at 18.)  However, Plaintiffs admit that their contracts with Trustpilot constitute business activity.  (Am. Compl. ¶ 3 ("Trustpilot sells subscriptions to businesses" who become "business customers".)  As one of the cases cited by Plaintiffs holds, "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of" GBL § 349.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

Plaintiffs contend that "small business owners" are "consumers".  (Opp'n at 18.)  However, in the case cited for that proposition, the "conduct at issue" was "not confined to a

---

[3] The GBL § 349 claim in *Ovitz v. Bloomberg, L.P.*, No. 603692/08, 2009 N.Y. Misc. LEXIS 6239 (Sup. Ct. N.Y. Co. Oct. 7, 2009), was later "dismissed for lack of injury".  *Ovitz v. Bloomberg L.P.*, 18 N.Y.3d 753, 759 (2012).  Other cases did not contain clear and unambiguous contractual terms defeating the claim.  *See Warner v. Tinder, Inc.*, No. 15-23790-CIV, 2018 WL 1894726, at *8 (S.D. Fla. Jan. 18, 2018) (no clear and unambiguous terms related to double-billing); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 861, 870 (N.D. Cal. 2019) (no unambiguous auto-renewal term nor did defendant "notify consumers of their right to cancel").

private contract dispute between businesses, but, rather, is based on a statewide and national advertising campaign directed at millions of users of yellow pages and tens of thousands of potential advertisers, distributed in a wide array of media on a large scale." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 338 F. Supp. 2d 422, 428-29 (E.D.N.Y. 2004). Similarly, *Wolo Manufacturing Corp. v. ABC Corp.*, 349 F. Supp. 3d 176 (E.D.N.Y. 2018), involved deceptive comparisons between competitors, which "had the tendency to deceive a substantial segment of the potential customers." *Id.* at 210.

Stretching to reach the public, Plaintiffs argue that Trustpilot "help[ed] a few wealthy customers game their reviews[.]" (Opp'n at 19.) That allegation has nothing to do with auto-renewal. Plaintiffs do not – because they cannot – allege that auto-renewing a Trustpilot subscription deceives the public. The GBL § 349 claim fails for this additional reason.

## VI. THE AGREEMENT IS OUTSIDE THE SCOPE OF GOL § 5-903

Agreements of a "consulting, analytical or administrative nature" fall outside GOL § 5-903. *Asimov*, 999 N.Y.S.2d 796, at *3. One need read no further than the first page of Plaintiffs' brief to conclude that Trustpilot provides such services.

As Plaintiffs state, "Trustpilot is an internet company that aggregates customer reviews of businesses." (Opp'n at 1.) "Like Yelp or Tripadvisor, Trustpilot posts rankings and reviews from prior customers of those businesses." (*Id.* at 1 n.2.) "In return for a non-refundable annual fee, Trustpilot was supposed to help Plaintiffs and the other members of the Class ***analyze and aggregate consumer data and reviews***, to improve online visibility – for example, enhanced prominence in Google search results." (*Id.* at 1) (emphasis added).

New York courts have specifically held that such contracts fall outside GOL § 5-903. *Trepp, LLC v. McCord Dev., Inc.*, 953 N.Y.S.2d 600, 600 (1st Dep't 2012) ("The contract under which plaintiff agreed to give defendant access to its information and analytics concerning

6

commercial and collateral mortgage-backed securities for a fee via plaintiff's website does not constitute a contract for 'service . . . to personal property'"). Indeed, far from being an "exception" (Opp'n at 20 n.19), New York courts routinely find that contracts for consulting, analytical or administrative services fall outside of GOL § 5-903(2). *See, e.g., Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network*, 19 A.D.3d 1145, 1146 (4th Dep't 2005) (where the "primary purpose of contract was for the administering of echocardiograms to patients" the contract was not "'for service, maintenance or repair to or for any real or personal property'") (citation omitted); *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 281 (E.D.N.Y. 2014) (holding that a contract for the collection of "commercial property like [] oil" was not real or personal property for purposes of GOL § 5-903).

Plaintiffs argue that GOL § 5-903 applies because "[t]ransacting in intellectual property – like customer data and reviews – is within the scope of GOL § 5-903." (Opp'n at 20.) As Plaintiffs allege, the reviews are submitted independently by consumers, as Trustpilot "posts consumer reviews of businesses" and maintains a website that "is set up so any user can review any business, free of charge." (Am. Compl. ¶¶ 1-2.) Plaintiffs do not own their reviews.

None of the cases cited by Plaintiffs holds that a public review or other public information is personal property for purposes of GOL § 5-903. Rather, in each case, a party serviced real or personal property belonging to the party claiming the statutory violation. *See Healthcare I.Q., LLC v. Tsai Chung Chao*, 118 A.D.3d 98, 100 (1st Dep't 2014) (involving management of "records generated, prepared and maintained by Dr. Chao and his staff, including patients' confidential records and files"); *Expo Sure USA v. Pita Lovers*, 62 Misc. 3d 1208(A), at *2 (Dist. Ct. Nassau Co. 2019) (involving plaintiff's "customer list" and "mailing list"); *Carbo Indus., Inc. v. Coastal Ref. & Mktg., Inc.*, 154 F. App'x 218, 219 (2d Cir. 2005) ("Under the

7

parties' contract, Carbo expressly agreed to provide and maintain storage facilities for defendants' petroleum products" and "'would insert additive into Defendants' petroleum if necessary'") (citation omitted); *Ambush Alarm & Elecs., Inc. v. 606 Second Ave. Rest. Corp.*, 59 Misc.3d 133(A), at *2 (2d Dep't 2018) (contract for monitoring "an alarm system at the corporate defendant's premises"); *Ovitz*, 2009 N.Y. Misc. LEXIS 6239, at *2 (involving lease to a "desktop terminal").

Here, Plaintiffs do not – because they cannot – allege that Trustpilot serviced Plaintiff's real or personal property. Rather, as Plaintiffs allege, Trustpilot "aggregate[s] and analyze[s]" *public* "consumer data and reviews" posted on *Trustpilot's* website. (Opp'n at 1.) That information is neither real property nor the subscriber's personal property. The services that Trustpilot performs are, by Plaintiffs' admission, consulting or analytical in nature.

Finally, as a "private right of action is not expressly created" by GOL § 5-903, it is an open question whether one exists. *Ovitz v. Bloomberg L.P.*, 909 N.Y.S.2d 710, 712 (1st Dep't 2010). Even if one does, as the Court of Appeals held in *Ovitz*, Plaintiffs "did not pay for services [they] did not receive; thus, no monetary damages were incurred." *Ovitz*, 18 N.Y.3d at 759. Likewise, Plaintiffs do not allege that they paid for services for that they did not receive. Thus, the GOL § 5-903 claim fails.

## VII. THE AGREEMENT'S CHOICE OF LAW CLAUSE SHOULD BE ENFORCED

Plaintiffs contend that the Agreement's New York choice of law clause is "unenforceable to the extent [it] might frustrate the public policy interests of another jurisdiction[.]" (Opp'n at 23.) Yet, on the next page of their brief, Plaintiffs state that there are only "slight" differences between the states' consumer protection statutes. (*Id.* at 24.) Plaintiffs have not met their "'heavy burden' . . . of demonstrating that the foreign law is offensive to [New York's] public

policy" as "this burden is not met by a mere showing that our law is different from that of a sister State." *Finucane v. Interior Constr. Corp.*, 264 A.D.2d 618, 620 (1999) (citation omitted).[4]

In both cases cited by Plaintiffs, the court declined to enforce a choice of law clause because another state had a "materially greater interest" than New York.[5] By contrast, New York has the greatest interest here. Trustpilot's "principal place of business" is New York, and Assignor is "headquartered in this District, regularly transacts and conducts business (including with Defendant)" in New York. (Am. Compl. ¶¶ 17-19, 22.) Thus, New York law should apply.

## VIII. THE ASSIGNMENT TO TRUSTPILOT DAMAGES LLC WAS CHAMPERTOUS

Finally, Plaintiffs argue that the assignment of claims to Trustpilot Damages LLC ("TDL") is not champertous because TDL has a "preexisting interest in the underlying agreement." (Opp'n at 25.) But Trustpilot did not argue, as Plaintiffs wrongly claim, that Assignor incorporated TDL. (*Id.*) Rather, Trustpilot argued that *Plaintiffs' counsel* – whose office is located at the same address at TDL's principal place of business[6] – incorporated TDL in

---

[4] As explained in Trustpilot's opening brief (TP Mem. at 20 n.5), Plaintiffs fail to state a claim under any other state statute because all require an unfair or deceptive act, which Plaintiffs cannot allege because the Agreement clearly discloses the automatic renewal policy and explains how to unsubscribe. Plaintiffs cite *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1023-24 (S.D. Iowa 2009), where the court upheld the choice of law provision because the court found it "sufficient that the choice of law provision" provides a basis to conclude that the class will "have claims under the statutes[.]" (Opp'n at 24.) Here, Plaintiffs do not have a claim under any of the statutes on which they rely.

[5] In *King*, the court declined to enforce the New York choice of law provision because none of the parties had "any connection to New York." *King*, 393 F. Supp. 3d at 869-70. In *Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *9 (S.D.N.Y. Feb. 7, 2018), the court found that California had a greater interest because individuals involved were "California residents" who "consistently lived and worked in California" and "performed their contract for Medicrea almost exclusively in California."

[6] Plaintiffs also question whether New York champerty law applies, as TDL is an Iowa corporation. (Opp'n at 25 n.24.) New York courts will not enforce an assignment that is contrary to New York public policy, regardless of the assignee's place of incorporation. *Am.*

9

order to bring suit.  (TP Mem. at 23.)  Therefore, this lawsuit implicates the very concerns that animate the champerty prohibition – "preventing attorneys from filing suit merely as a vehicle for obtaining costs."  *Tr. For the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.,* 13 N.Y.3d 190, 199 (2009).

      Plaintiffs' cases are, per usual, inapposite.  *Wimbledon* did not involve an assignment of contract; rather, it involved an undisclosed litigation funding arrangement.  *Matter of Wimbledon Fund, SPC (Class TT) v. Weston Capital Partners Master Fund II, Ltd.*, 184 A.D.3d 448, 449 (1st Dep't 2020).  *Merrill Lynch* and *Universal* both concerned companies taking an assignment of a claim to collect damages "for losses on a debt instrument in which it holds a preexisting proprietary interest."  *Merrill Lynch,* 13 N.Y.3d at 195-99; *Universal Inv. Advisory SA v. Bakrie Telecom Pte., Ltd.*, 154 A.D.3d 171, 180 (1st Dep't 2017).

      No similar preexisting interest exists here.  As its name suggests, TDL was created specifically to take the assignment and sue.  *See Am. Optical,* 56 F.R.D. at 31 (voiding assignment where assignee "had nothing to do with the relationships between the [] defendants and the [Assignor] which form the basis for the instant complaint.").  Indeed, Plaintiffs do not – because they cannot – explain what, if any, rights TDL was assigned *aside* from the right to sue. *See Frank H. Zindle, Inc. v. Friedman's Express, Inc.*, 17 N.Y.S.2d 594, 594 (1st Dep't 1940) (holding that plaintiff was not real party in interest because "its only interest in the assignment was to bring a suit thereon").  Therefore, in the unlikely event that this case is not dismissed, TDL should be dismissed as a Plaintiff.

---

*Optical Co. v. Curtiss*, 56 F.R.D. 26, 31 (S.D.N.Y. 1971) (dismissing complaint on grounds of champerty where plaintiff assignee was a Massachusetts corporation).

## CONCLUSION

For the foregoing reasons and those stated in Trustpilot's opening brief, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
April 30, 2021

**MCDERMOTT WILL & EMERY LLP**

  /s/ *Andrew B. Kratenstein*
Andrew B. Kratenstein
Caroline A. Incledon
Kierstin S. Fowler
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

William P. Donovan, Jr. (admitted *pro hac vice*)
2049 Century Park East
Suite 3200
Los Angeles, California 90067
(310) 788-4121

*Attorneys for Defendant Trustpilot, Inc.*